**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Ezequiel ESPARZA–TRETO,**
**Defendant–Appellant.**

**No. 08CA2101.**

Colorado Court of Appeals,
Div. I.

July 21, 2011.

Rehearing Denied Aug. 25, 2011.*

* Taubman, J., would grant.

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Ezequiel Esparza–Treto (Esparza), appeals his judgment of conviction and sentence on numerous counts arising from a high-speed chase through Grand Junction, Colorado that ended when Esparza collided with another vehicle, causing serious bodily injury to both Esparza's passenger and the driver of the other vehicle. On the evidence presented here, we conclude that Esparza did not use his vehicle as a deadly weapon and therefore reverse his convictions for second and third degree assault. We further conclude that Esparza's reckless driving conviction must merge into his vehicular eluding conviction and therefore vacate the reckless driving conviction. In all other respects, we affirm the judgment and sentence, although we remand for correction of the mittimus.

## I. Background

On the morning of December 6, 2006, Esparza was driving his car with a passenger through Grand Junction. A trooper with the Colorado State Patrol activated his patrol car's strobe lights and siren in an attempt to stop Esparza to ticket him for speeding, but Esparza did not stop. Instead, a high-speed chase ensued, during which Esparza sped through residential neighborhoods and ignored red lights and stop signs. The chase ended when Esparza drove through a red light at a busy intersection and collided with another vehicle. The crash caused serious bodily injury to both Esparza's passenger and the driver of the other vehicle.

As pertinent here, Esparza was ultimately convicted of (1) one count of first degree assault with extreme indifference as to both the driver of the other vehicle and his passenger; (2) one count of second degree reckless assault as to the other driver; (3) one count of third degree assault as to his passenger; (4) two counts of vehicular assault (one as to the other driver and one as to his passenger); (5) one count of vehicular eluding; (6) one count of reckless driving; (7) one count of speeding; and (8) one count of violation of a traffic control device. The trial court sentenced Esparza on these various counts, and Esparza now appeals.

## II. Sufficiency of the Evidence

Esparza first contends that the evidence at trial was insufficient to prove beyond a reasonable doubt that he committed the crimes of first, second, and third degree assault. We conclude that the evidence was sufficient to support Esparza's first degree assault conviction. We agree with Esparza, however, that the evidence was insufficient to establish second and third degree assault, because the evidence did not support a finding that Esparza used his vehicle as a deadly weapon.

### A. Standard of Review

The issue of the sufficiency of the evidence is a question of law that we review de novo. *People v. Kriho,* 996 P.2d 158, 172 (Colo.App. 1999). We must determine whether any rational trier of fact might accept the evidence,

taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999); *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005).

■ The prosecution must be given the benefit of every reasonable inference that might be fairly drawn from the evidence. *McIntier*, 134 P.3d at 471. Further, the determination of the credibility of the witnesses is solely within the province of the fact finder, and it is the fact finder's function to consider and determine the weight to be accorded all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence. *Id.* An appellate court may not act as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion were it the trier of fact. *Id.* at 471–72.

### B. First Degree Assault

A person commits the crime of assault in the first degree with extreme indifference when "[u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person." 18–3–202(1)(c), C.R.S.2010.

At trial, three state troopers testified regarding their pursuit of Esparza's vehicle. A trooper flying a traffic enforcement operation observed Esparza speed through a fifty mile per hour zone at sixty-six miles per hour and then sixty-nine miles per hour. A trooper on the ground testified that Esparza's vehicle was traveling well over the posted speed limit when it passed him. The same trooper watched Esparza approach an intersection with a red light, veer to the right of an intersecting vehicle, and collide with it in the intersection.

A third trooper testified that he pursued Esparza while in a marked patrol car. The trooper followed Esparza off of the highway and through the bay of a car wash before Esparza returned to the northbound lane of the road. Despite the trooper's activating his sirens and lights, Esparza did not slow down or stop. Indeed, at one point, he increased his speed to seventy miles per hour while traveling through a forty mile per hour zone. The trooper testified that Esparza cut through traffic, passed vehicles in an unlawful manner, and continued through a red light at an intersection. This trooper followed Esparza to a residential area and observed Esparza speed through three posted stop signs without stopping.

The chase ended when Esparza attempted to speed through a red light. The third trooper testified that he observed Esparza enter the intersection, attempt to swerve without braking around a vehicle passing through that intersection, and collide with that vehicle. The trooper then used his patrol car to pin Esparza's vehicle so that he could not drive back into traffic.

A trooper estimated Esparza's speed at the moment of impact as seventy-five miles per hour, and a bystander described Esparza as driving "like a bat out of hell." As noted above, the collision inflicted serious bodily injury on the driver of the other vehicle and on the passenger in Esparza's vehicle.

We conclude that the foregoing evidence amply establishes that Esparza drove recklessly and with extreme indifference through business and residential areas of Grand Junction. Moreover, the evidence shows that Esparza knowingly engaged in conduct that created a grave risk of death to those around him and ultimately caused a collision that resulted in serious bodily injury to two other people. Viewing the evidence in the light most favorable to the prosecution, we thus conclude that the record supports the jury's determination that Esparza committed the crime of first degree assault with extreme indifference.

### C. Second and Third Degree Assault

■ A person commits second degree reckless assault when he or she "recklessly causes serious bodily injury to another person by means of a deadly weapon." 18–3–203(1)(d), C.R.S.2010. As charged here, a person commits third degree assault when he or she "with criminal negligence ... causes bodily injury to another person by means of

a deadly weapon." 18–3–204(1)(a), C.R.S. 2010.

Relying on *People v. Stewart*, 55 P.3d 107, 112 (Colo.2002), Esparza argues that there was insufficient evidence to show that he used his motor vehicle as a deadly weapon. Specifically, he asserts that unlike in *Stewart*, the evidence here was insufficient to allow a reasonable jury to conclude that he used or intended to use his vehicle as a deadly weapon. We agree.

Section 18–1–901(3)(e), C.R.S.2010, provides:

> "Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:
>
> (I) A firearm, whether loaded or unloaded;
>
> (II) A knife;
>
> (III) A bludgeon; or
>
> (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

■ Our supreme court has "consistently held that whether an object is a deadly weapon for the purposes of section 18–1–903(e)(IV) depends on the manner in which the object is used." *Stewart*, 55 P.3d at 117. Implicit in the supreme court's deadly weapon analysis of subpart (IV) "is the requirement that the object be used or intended to be used as a weapon." *Id.* To determine whether an object is a deadly weapon, we employ a two-step inquiry:

> First, the object must be used or intended to be used as a weapon. *Grass v. People*, 172 Colo. 223, 228, 471 P.2d 602, 604 (1970) (adopting the view that the instruments that are not per se deadly weapons "must ... mean some article or object, which could be and was used as a weapon"). Second, the object must be capable of causing serious bodily injury.

*Id.*

Thus, the fact that an object is capable of causing serious bodily injury is not alone enough. That an object was capable of producing serious bodily injury "would be irrelevant for purposes of section 18–1–901(3)(e) had [the object] not been deployed as a

weapon. The defendant need not intend to cause serious bodily injury; he must merely *use as a weapon* an object or instrument that is capable of causing such injury." *Id.* (emphasis added).

■ Although in *Stewart*, our supreme court repeatedly emphasized that to be a "deadly weapon," an object must be used or deployed as a weapon, neither that court nor the General Assembly has defined the word "weapon." In common usage, however, a "weapon" is defined as "an instrument of offensive or defensive combat: something to fight with: something (as a club, sword, gun, or grenade) used in destroying, defeating, or physically injuring an enemy." *Webster's Third New International Dictionary* 2589 (2002). Accordingly, we conclude that to be a deadly weapon, an object must be used in connection with assaultive conduct directed toward an intended opponent or adversary.

Our supreme court's precedents regarding objects being used as deadly weapons are fully consistent with this conclusion, because each involved an object being specifically directed toward another in an assaultive way. *See, e.g., People v. Saleh*, 45 P.3d 1272, 1276 (Colo.2002) (holding that the defendant's foot was used as a deadly weapon when the defendant kicked the victim in the back in order to propel her down a flight of stairs); *People v. Ross*, 831 P.2d 1310, 1314 (Colo. 1992) (holding that the defendant's fist was used as a deadly weapon when the defendant, who was angry because the elderly victim's errant golf shot hit the defendant's car, punched the victim in the face, causing eight major fractures and resulting in the victim's having to have his lower jaw replaced); *Bowers v. People*, 617 P.2d 560, 563 (Colo.1980) (holding that a quart whiskey bottle that was made of glass and full was a deadly weapon when the defendant, in the course of a robbery of a liquor store, hit the store owner over the head with the bottle hard enough to shatter the bottle and render the owner unconscious); *Miller v. Dist. Court*, 193 Colo. 404, 407, 566 P.2d 1063, 1066 (1977) (holding that a beer bottle containing a firecracker was a deadly weapon when the defendant threw the bottle in the direction of the victim's home, causing the bottle to explode

twenty feet from a witness and scattering glass fragments onto the yard and front porch, where another witness was standing); *Grass*, 172 Colo. at 229, 471 P.2d at 605 (holding that a shoe could be a deadly weapon when the defendant struck the victim in the face with his fist, proceeded to rain blows on the victim, and after the victim fell to the ground, kicked him squarely in the face, breaking his nose and rendering him unconscious).

The supreme court's decision in *Stewart* is particularly instructive here. In *Stewart*, 55 P.3d at 117, the court observed that a motor vehicle may be a deadly weapon, depending on how it is used in a particular situation. In that case, three pedestrians were walking abreast in the middle of the driving lane when the defendant, apparently annoyed that they were in the middle of the road, "veered toward [them] at an angle," hitting one of them. *Id.* at 112. A verbal altercation ensued, after which the defendant "began driving back and forth at an angle and in an aggressive manner." *Id.* The pedestrian who had been hit by the defendant's vehicle eventually landed on top of the vehicle and then rolled off onto the ground. *Id.* at 112–13. Thereafter, the defendant ran over this pedestrian's head, which ultimately caused his death. *Id.* at 113.

In light of the foregoing authorities, we conclude that the evidence was insufficient to establish beyond a reasonable doubt that Esparza used his vehicle as a weapon here. In this case, unlike in *Stewart*, there was no evidence that Esparza used his vehicle in connection with assaultive conduct specifically directed toward the other driver. To the contrary, the People's own evidence showed that Esparza was attempting to *avoid* the other driver's car when the collision occurred. *Cf. People v. Roberts*, 983 P.2d 11, 15 (Colo.App.1998) (holding that the trial court did not err in refusing to instruct the jury that a person's fists may be deadly weapons when there was no evidence that, on the night in question, the person at issue used or intended to use his fists as deadly weapons).

In so holding, we acknowledge Judge Taubman's argument that a literal reading of

section 18–1–901(3)(e) does not require that a device or instrument be used or deployed as a weapon against an intended opponent or adversary. We part ways, however, based on our reading of *Stewart*, which, as noted above, requires more than just the use of an object in a manner capable of producing death or seriously bodily injury. Rather, as we read *Stewart*, it requires that the object be used or deployed as a weapon, and there is no evidence of that here. In addition, in our view, the dissent's reliance on the applicable mental states for second and third degree assault to argue that Esparza used his vehicle as a deadly weapon conflates the applicable *mens rea* (i.e., recklessness or criminal negligence) with the applicable *actus reus* (i.e., the use of a deadly weapon). *Cf. Stewart*, 55 P.3d at 117–18 (distinguishing recklessly causing serious bodily injury when using a vehicle as a vehicle from recklessly causing serious bodily injury when using the vehicle as a weapon, with the latter justifying an increased penalty).

Were we to conclude that Esparza used his vehicle as a deadly weapon on the facts presented here, where the evidence established no more than that Esparza drove recklessly and caused an accident resulting in serious bodily injury to another, then every reckless driving incident resulting in serious bodily injury to another would suffice to establish the elements of second or third degree assault. This would effectively convert a class 2 misdemeanor with a maximum sentence of six months in county jail to a class 4 felony and crime of violence with a possible sentence of twelve years in prison. *See* 18–1.3–401(1)(a)(V)(A), 18–1.3–406, 18–3–203(1)(d), (2)(b), 42–4–1401, C.R.S.2010. In our view, construing section 18–1–901(3)(e)(IV) to apply so broadly may well implicate equal protection concerns. *See Stewart*, 55 P.3d at 114 ("[I]f a criminal statute proscribes different penalties for identical conduct, a person convicted under the harsher penalty is denied equal protection unless there are reasonable differences or distinctions between the proscribed behavior."). Accordingly, we decline to adopt such a construction. *See Kirkmeyer v. Dep't of Local Affairs*, —— P.3d ——, ——, 2011 WL 1168289 (Colo.App.2011)

(noting that an appellate court has an obligation to avoid interpretations that invoke constitutional deficiencies and that when possible, statutes are to be construed so as to avoid questions of their constitutional validity).

In sum, we conclude that the evidence at trial was sufficient to support Esparza's conviction for first degree assault but was insufficient to support his second and third degree assault convictions. In light of this disposition, we need not address Esparza's remaining contentions as to the second and third degree assault convictions.

### III. Merger

Esparza next contends that the trial court erred when it failed to vacate various lesser offense convictions under the doctrine of merger. Specifically, as still pertinent here, he contends that his reckless driving conviction should merge into his vehicular eluding conviction and that his conviction for attempting to elude a police officer should merge into his conviction for vehicular eluding. We agree with Esparza's first contention but reject his second.

### A. Standard of Review

■ Because the issue of merger presents a question of statutory interpretation, we review de novo whether merger applies to criminal offenses. *People v. Torres*, 224 P.3d 268, 275 (Colo.App.2009).

### B. Analysis

"When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." 18–1–408(1), C.R.S.2010. He or she may not be convicted of more than one offense, however, if "[o]ne offense is included in the other." 18–1–408(1)(a), C.R.S. 2010.

■ To determine whether one offense is a lesser included offense of another, we apply the "strict elements" test of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See People v. Leske*, 957 P.2d 1030, 1036–37 (Colo.1998). Under that test,

[i]f proof of facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is an included offense. However, if each offense necessarily requires proof of at least one additional fact that the other does not, the strict elements test is not satisfied.

*People v. Bass*, 155 P.3d 547, 553 (Colo.App. 2006) (citations omitted). For purposes of this test, we compare the elements of the statutes involved, and not the evidence presented at trial, to determine whether one offense is a lesser included offense of another. *Torres*, 224 P.3d at 275.

■ One offense may also be a lesser included offense of another, even though it does not satisfy the strict elements test, when it "differs from the [greater] offense ... only in the respect that a less serious injury or risk of injury to the same person ... suffices to establish its commission." 18–1–408(5)(c), C.R.S.2010. Section 18–1–408(5)(c) "is limited to situations in which the 'included offense' is less serious or carries a lesser degree of culpability." *People v. Halstead*, 881 P.2d 401, 406 (Colo.App.1994).

#### 1. Vehicular Eluding and Reckless Driving

■ Esparza asserts that his reckless driving conviction should merge into his vehicular eluding conviction. We agree.

A person commits the crime of vehicular eluding if he or she, while operating a motor vehicle, (1) knowingly eludes or attempts to elude a police officer who is also operating a motor vehicle; (2) knows or reasonably should know that he or she is being pursued by said police officer; and (3) operates his or her vehicle in a reckless manner. 18–9–116.5(1), C.R.S.2010.

A person commits the offense of reckless driving when he or she drives a motor vehicle "in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property." 42–4–1401(1), C.R.S. 2010.

In *People v. Pena*, 962 P.2d 285, 289 (Colo. App.1997), a division of this court held that reckless driving is a lesser included offense of vehicular eluding. The division concluded

that the element of recklessness is the same in each offense, despite the applicable statutes' being worded differently. *Id.*

Relying on *People v. Scarlett*, 985 P.2d 36, 42–43 (Colo.App.1998), the People argue that *Pena* was wrongly decided and that reckless driving is not a lesser included offense of vehicular eluding, because the two statutes define recklessness differently. *Scarlett*, however, did not address the issue of merger. Moreover, the *Scarlett* division cited *Pena* but did not express disagreement with its holding. *Id.*

In light of the foregoing, we follow the reasoning of *Pena* here and conclude that one cannot commit the offense of vehicular eluding without also committing the offense of reckless driving. Thus, we conclude that reckless driving is a lesser included offense of vehicular eluding under the strict elements test and that the trial court erred in not merging Esparza's convictions for these two offenses.

### 2. Vehicular Eluding and Attempting to Elude a Police Officer

■ Esparza also contends that his conviction for attempting to elude a police officer should merge into his conviction for vehicular eluding. We are not persuaded.

As noted above, a person commits the crime of vehicular eluding if he or she, while operating a motor vehicle, (1) knowingly eludes or attempts to elude a police officer who is also operating a motor vehicle; (2) knows or reasonably should know that he or she is being pursued by said police officer; and (3) operates his or her vehicle in a reckless manner. 18–9–116.5(1).

A person commits the crime of attempting to elude a police officer when he or she, while operating a motor vehicle, (1) has received a visual or audible signal from a police officer driving a marked vehicle directing the operator to bring the vehicle to a stop, and (2) willfully increases his or her speed or extinguishes his or her lights in an attempt to elude such police officer, or willfully attempts in any other manner to elude the police officer, or does elude the police officer. 42–4–1413, C.R.S.2010.

In *People v. Fury*, 872 P.2d 1280, 1283 (Colo.App.1993), a division of this court held, and we agree, that eluding a police officer is not a lesser included offense of vehicular eluding. The statutory language defining eluding a police officer requires that the operator of a motor vehicle (1) receive a visual or audible signal, such as a red light or siren, (2) from a police officer driving a marked vehicle showing the vehicle to be an official police, sheriff, or Colorado state patrol car, (3) directing the operator to stop. 42–4–1413.

In contrast, to be convicted of vehicular eluding, the motor vehicle operator need not receive any type of signal from a marked police car. *See* 18–9–116.5(1). Rather, the evidence need show only that the driver knew or reasonably should have known that he or she was being pursued by a police officer, and this element can be proven absent any audible or visual signal from the officer. *Id.* Moreover, vehicular eluding requires the actor to operate his or her vehicle in a reckless manner, *see id.*, while attempting to elude a police officer lacks this requirement, *see* 42–4–1413.

For these reasons, we conclude that attempting to elude a police officer is not a lesser included offense of vehicular eluding.

### IV. Jury Instruction

Esparza next contends that the trial court abused its discretion when it rejected his proffered jury instruction defining the terms "extreme indifference" and "grave risk of death," both of which are elements of first degree assault. We disagree.

### A. Standard of Review

■ The proper construction of a statute is a question of law that we review de novo. *People v. Hernandez*, 160 P.3d 263, 264 (Colo.App.2007), *aff'd*, 176 P.3d 746 (Colo. 2008); *see also Griego v. People*, 19 P.3d 1, 7 (Colo.2001) (noting that a jury can only fulfill its constitutionally mandated role of finding each element beyond a reasonable doubt when that jury has been instructed on the precise statutory definition for the required culpable mental state).

■ It is within the sound discretion of the trial court to determine whether additional jury instructions that properly state the law should be submitted. *People v. Chavez,* 190 P.3d 760, 769 (Colo.App.2007). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *People v. Orozco,* 210 P.3d 472, 475 (Colo.App.2009).

## B. Analysis

■ In Jury Instruction No. 11, the trial court used the precise language of section 18–3–202(1)(c) to instruct the jury on the elements of assault in the first degree with extreme indifference. Esparza, however, asked the trial court to instruct the jury that "extreme indifference means a total lack of concern or caring," and "grave risk of death means a practically certain risk of death." The trial court rejected these tendered instructions, and we perceive no abuse of discretion.

Relying on *People v. Marcy,* 628 P.2d 69, 80 (Colo.1981), in which our supreme court defined the element of acting with extreme indifference to the value of human life as "acting with the awareness that one's actions are practically certain to cause the death of another," Esparza argues that the trial court should have defined that element here. *See also People v. Thomas,* 729 P.2d 972, 975 (Colo.1986) ("[T]he intent requirement for extreme indifference murder ... necessitates a conscious object to engage in conduct that in fact creates a grave risk of death to another."). We are not persuaded.

■ "When a term, word, or phrase in a jury instruction is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning, an instruction defining [that term, word, or phrase] is not required." *People v. Thoro Prods. Co.,* 45 P.3d 737, 745 (Colo.App.2001), *aff'd,* 70 P.3d 1188 (Colo.2003). In the context of first degree assault, " '[g]rave' is commonly understood to mean serious or imminent, or likely to produce great harm or danger." *Marcy,* 628 P.2d at 79. Similarly, "the phrase 'extreme indifference' uses common words and is generally understood to mean a total lack of concern or caring." *People v. Johnson,* 923 P.2d 342, 347 (Colo.App.1996). When a jury indicates no confusion about the meaning of such common phrases, the trial court's failure to define such phrases specifically does not require a new trial. *Id.*

Here, the trial court used commonly understood words to define the first degree assault elements of "extreme indifference to human life" and "grave risk of death." We agree with the *Johnson* division's analysis of the same issue, *see Johnson,* 923 P.2d at 347, and thus conclude that the trial court's decision not to give Esparza's proffered jury instruction was not manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *See Orozco,* 210 P.3d at 475.

## V. Mittimus

■ Finally, Esparza contends, the People concede, and we agree, that the mittimus must be corrected to reflect the jury's verdict finding him guilty of attempting to elude a police officer in violation of section 42–4–1413.

■ When the mittimus is incorrect, we must remand to allow the trial court to correct it. *See People v. Malloy,* 178 P.3d 1283, 1289 (Colo.App.2008). Here, Esparza was originally charged with one count of attempting to elude a police officer as defined in section 42–4–1413. Although the jury subsequently returned a verdict finding Esparza guilty of that charge, the mittimus erroneously reflects that Esparza was convicted of the class six felony of attempted vehicular eluding under section 18–9–116.5.

Accordingly, we remand this case with instructions that the trial court correct the mittimus to reflect the true nature of the crime of which Esparza was convicted. *See Malloy,* 178 P.3d at 1289.

## VI. Conclusion

For these reasons, the judgment is reversed as to Esparza's convictions for second and third degree assault, the judgment and

sentence are vacated as to Esparza's reckless driving conviction, and this case is remanded to the trial court to correct the mittimus in accordance with this opinion. In all other respects, the judgment and sentence are affirmed.

Judge CARPARELLI concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

## I.  Introduction

The majority affirms the conviction of defendant, Ezequiel Esparza–Treto (Esparza), for first degree assault with extreme indifference, but concludes there was insufficient evidence to sustain his convictions for one count of second degree reckless assault and one count of third degree assault.  However, all three assault convictions were based on Esparza's collision with another vehicle, which caused serious bodily injury to both Esparza's passenger and the driver of the other vehicle, and even though the language of the three assault statutes differs, I respectfully conclude there was sufficient evidence to sustain Esparza's three assault convictions.

Nevertheless, I would vacate Esparza's conviction for third degree assault, because I agree with his contention that his convictions for third degree assault and vehicular assault on his passenger are legally and logically inconsistent.  I therefore address that argument below, particularly because Esparza argues that if his contention is correct, the convictions for both offenses must be vacated.  In addition, I address two other merger issues raised by Esparza, which the majority does not address because of its reversal of Esparza's convictions for second and third degree assault.  I also address, but reject, Esparza's contention that the trial court abused its discretion when it imposed a sentence for his second degree assault conviction to run consecutively to his sentence for his first degree assault conviction.  Because of its reversal of the second degree assault conviction, the majority does not address this issue.

Finally, I note that I agree with the majority's analysis of the sufficiency of the evidence concerning first degree assault (part II.B), merger (part III), jury instruction (part IV), and correction of the mittimus (part V).

## II.  Sufficiency of the Evidence

Esparza contends that the evidence at trial was insufficient to prove beyond a reasonable doubt that he committed the crimes of first, second, and third degree assault.  As noted, I agree with the majority's analysis that Esparza's first degree assault conviction should be affirmed, but I disagree with its reversal of his convictions for second and third degree assault.

### A.  Standard of Review

I agree with the majority's recitation of the standard of review, especially the principles that we must view the evidence in the light most favorable to the prosecution and that the prosecution must be given the benefit of every reasonable inference that may be fairly drawn from the evidence.  *See People v. Sprouse,* 983 P.2d 771, 777–78 (Colo.1999).

### B.  Second and Third Degree Assault

A person commits the crime of second degree reckless assault when he or she recklessly causes serious bodily injury to another person by means of a deadly weapon.  18–3–203(1)(d), C.R.S.2010.

A person commits the crime of third degree assault when he or she "knowingly or recklessly causes bodily injury to another person or with criminal negligence ... causes bodily injury to another person by means of a deadly weapon."  18–3–204(1)(a), C.R.S.2010.  Although this offense contains three different mens reas, here, the jury was instructed only with respect to the mens rea of criminal negligence.

Relying on *People v. Stewart,* 55 P.3d 107, 112 (Colo.2002), the majority concludes that there was insufficient evidence to show that Esparza used his motor vehicle as a deadly weapon.  Specifically, the majority concludes that unlike the defendant in *Stewart,* there was no evidence that he actually used or

intended to use his motor vehicle as a weapon.

I disagree with the majority's analysis for three reasons. First, I disagree that principles of statutory construction lead to the majority's conclusion that a defendant must use a motor vehicle "in connection with assaultive conduct directed toward an intended opponent or adversary." Second, under the applicable principles, there was sufficient evidence that Esparza caused both serious bodily injury and bodily injury to the victims by means of a deadly weapon. Third, the *Stewart* court already has rejected the argument that convicting an individual of both second degree reckless assault and reckless vehicular assault violates a defendant's right to equal protection, and, in my view, its analysis similarly applies to the majority's equal protection concern regarding the offenses of second degree reckless assault and reckless driving under section 42–4–1401, C.R.S.2010.

### 1. Statutory Interpretation

Statutory interpretation is question of law that appellate courts review de novo. *People v. Disher*, 224 P.3d 254, 256 (Colo.2010). When conducting statutory interpretation, a court's task is to give effect to the intent of the General Assembly and the purpose of the statute's legislative scheme. In so doing, a reviewing court considers the statute as a whole, giving consistent, harmonious, and sensible effect to all its parts. *Moffett v. Life Care Ctrs.*, 219 P.3d 1068, 1072 (Colo.2009).

A reviewing court first looks to the plain language of the statute and, if the statutory language is clear and unambiguous, the court applies it as written without resorting to interpretive rules of statutory construction. *In re Marriage of Rozzi*, 190 P.3d 815, 824 (Colo.App.2008).

Both the second and third degree assault statutes require that a person cause bodily injury or serious bodily injury by means of a deadly weapon. The term "deadly weapon" is defined by statute.

Each of the following is a deadly weapon when it is used or intended to be used in a manner "capable of producing death or serious bodily injury: (I) A firearm, whether loaded or unloaded; (II) [a] knife; (III) [a] bludgeon; or (IV) [a]ny other weapon, device, instrument, material, or substance, whether animate or inanimate." 18–1–901(3)(e)(I)–(IV), C.R.S.2010.

"We have consistently analyzed whether objects are deadly weapons by evaluating the manner in which the objects are used." *People v. Ross*, 831 P.2d 1310, 1312 (Colo.1992). "[A]ny object can be a deadly weapon if it is used in a manner capable of producing death or serious bodily injury." *Stewart*, 55 P.3d at 117 (quoting *People v. Saleh*, 45 P.3d 1272, 1275 (Colo.2002)).

To determine whether an object is a deadly weapon, courts apply a two-step test: (1) the object must be used or intended to be used as a weapon; and (2) the object must be capable of causing serious bodily injury. *Stewart*, 55 P.3d at 117.

Under the first step as applicable here, a driver must use or intend to use a motor vehicle as a weapon. *Id.* Relying on the dictionary definition of "weapon" and case law, the majority concludes that to be a deadly weapon, "an object must be used in connection with assaultive conduct directed toward an intended opponent or adversary."

In my view, this interpretation does not give harmonious, consistent, and sensible effect to the overall statutory scheme.

As noted above, a person commits the crime of second degree reckless assault when he or she recklessly causes serious bodily injury to another person by means of a deadly weapon. 18–3–203(1)(d). Certain objects, such as cars, may be deadly weapons if the manner in which they are used or capable of being used is capable of producing death or serious bodily injury. 18–1–901(3)(e). A person acts recklessly when he or she "*consciously* disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." 18–1–501(8), C.R.S.2010 (emphasis added). Reading these three statutes together, I conclude the General Assembly intended that a person using a deadly weapon could be guilty of second degree reckless assault when he or she consciously disregards a substantial and unjustifiable

risk of causing serious bodily injury without having "an intended opponent or adversary."

Clearly, a person driving a car, intending to use a car as a weapon, may be found guilty of second degree assault. *See Stewart,* 55 P.3d at 117. However, the General Assembly contemplated that a person who "used" a car, as a deadly weapon, without intending to do so, could also be found guilty of second degree assault. Otherwise, the meaning of "used" as opposed to "intended to use" would be rendered superfluous. *See People v. Connors,* 230 P.3d 1265, 1266 (Colo.App.2010).

Thus, in my view, a defendant could use an object, such as a car, as a deadly weapon, without intending to use it as a deadly weapon. This interpretation is plausible in the context of second degree assault, where the mens rea of "recklessly" requires that a person consciously disregard a substantial and unjustifiable risk. Therefore, unlike the majority, I would conclude that a person could use a car as a weapon without having an intended opponent or adversary.

Accordingly, in most cases, whether a defendant "used" an object as a weapon will be a question for the fact finder to determine. As I conclude below, sufficient evidence established that Esparza used his car as a weapon, that the car was capable of producing serious bodily injury, that the car was therefore a deadly weapon, and that Esparza was guilty of second degree assault.

I would reach the same conclusion with regard to third degree assault, which, as charged here, required a mens rea of criminal negligence. Criminal negligence is defined as follows: "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." 18–1–501(3), C.R.S.2010. It is even more unlikely with regard to third degree assault and a mens rea of criminal negligence that a defendant would have an intended opponent or adversary when that defendant fails to perceive a substantial and unjustifiable risk of causing bodily injury. Rather, as with second degree assault, the General Assembly recognized that an object not typically considered a weapon could be used as a weapon and also be a "deadly weapon" for purposes of third degree assault, even if the defendant did not intend to use the object as a weapon.

Contrary to the majority's view, I do not believe my analysis conflates the applicable mens rea with the applicable actus reus. As discussed above, the General Assembly intended that one could be found guilty of second and third degree assault when his or her conduct was based on the mens rea of reckless or criminally negligent conduct. The actus reus, in contrast, requires a determination that a person used or intended to use an object as a deadly weapon. While an intent to use an object as a deadly weapon may contemplate the presence of "an intended opponent or adversary," the mere use of an object as a deadly weapon does not. Thus, separate analysis of the mens rea and the actus reus for second and third degree assault is consistent with my statutory analysis.

In sum, I conclude that a defendant may be convicted of second or third degree assault without any requirement that the defendant use a particular object "in connection with assaultive conduct directed toward an intended opponent or adversary."

The People do not contend that Esparza intended to use his vehicle as a weapon, nor does Esparza dispute that his vehicle was an object capable of causing serious bodily injury. Thus, the dispositive issue, to which I now turn, is whether Esparza used his vehicle as a deadly weapon in the circumstances of this case.

#### 2. Vehicle Used as a Deadly Weapon

At trial, the primary issue with respect to the second and third degree assault offenses was whether Esparza used his motor vehicle as a deadly weapon.

In reviewing the sufficiency of the evidence, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *Sprouse,* 983 P.2d at 777. Also, the prosecution must be given the benefit of

every reasonable inference that might fairly be drawn from the evidence. *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005).

Significantly, during the closing arguments in this case, the prosecutor focused on whether Esparza was using his vehicle as a deadly weapon. The prosecutor argued as follows with regard to the charge of second degree assault:

> I think in this day and age, it goes without saying that an automobile can be a deadly weapon, and just assuredly as defendant was pointing a gun that day, he wasn't, but if he was pointing a gun, driving a vehicle in the manner he was driving it, it is like holding a loaded weapon and shooting it, because sooner or later in the 5.7 mile chase, he was going to put one person or many people at risk of death or serious bodily injury. That is a deadly weapon, the way he was driving his car on the day in question, and again, he doesn't even have to intend for that to be the actions. It just has to be used in that manner, and you can think about that when you think about his driving behavior, reckless all the way. 5.7 miles of reckless, high speed driving.

Thus, the prosecutor clearly presented to the jury the question of whether Esparza was using his motor vehicle as a deadly weapon. Just as the majority concludes with respect to first degree assault that the evidence shows that Esparza knowingly engaged in conduct that created a grave risk of death to those around him and ultimately caused a collision that resulted in serious bodily injury to two other people, I would conclude that the evidence clearly supports the jury's finding that Esparza also acted recklessly and with criminal negligence, using his vehicle as a deadly weapon to cause serious bodily injury and bodily injury. Thus, I would conclude that the record supports Esparza's convictions for second and third degree assaults.

### 3. Equal Protection

Finally, I disagree with the majority's suggestion that affirming Esparza's conviction for second degree reckless assault would result in virtually every reckless driving inci-

dent resulting in serious bodily injury or bodily injury subjecting the driver to conviction for second or third degree assault. According to the majority, this interpretation "may well implicate equal protection concerns."

However, in my view, such concerns are unfounded, because the *Stewart* court squarely rejected the defendant's similar argument there that his right to equal protection was violated because the statutes governing vehicular assault and reckless second degree assault with a deadly weapon proscribed the same conduct but mete out disparate punishments. In part IV.B.1 of my opinion below, discussing one of the merger issues, I set forth the reasons the *Stewart* court rejected the equal protection contention.

In any event, even if drivers charged with reckless driving will be subject to conviction for second or third degree assault, that result is consistent with the intent of the General Assembly to punish different conduct under each statute. In addition, some reckless driving offenses do not involve serious bodily injury. For example, a person driving a motor vehicle at an excessive rate of speed through a deserted stretch of highway during a time when he or she is unlikely to encounter another person or driver may drive recklessly, but might not commit an assault.

### 4. Conclusion

Accordingly, I conclude that the evidence at trial was sufficient to prove beyond a reasonable doubt that Esparza committed the crimes of second and third degree assault.

### III. Legal Consistency

Because the majority concludes that Esparza's conviction for third degree assault must be set aside, it does not address his contention that his convictions for third degree assault and vehicular assault on his passenger are legally and logically inconsistent, so that both convictions must be vacated. Even though I have concluded above that there was sufficient evidence to support Esparza's conviction for third degree assault,

I agree that his convictions for third degree assault and vehicular assault are legally and logically inconsistent. However, I disagree that both convictions must be vacated and would vacate only the third degree assault conviction.

Esparza argues that the different mens rea elements for these two offenses cause them to be legally and logically inconsistent. He contends that he cannot have both a reckless and a negligent mens rea while committing the same act. I agree.

Esparza's convictions required two different mens rea findings. His vehicular assault conviction required evidence that he drove a motor vehicle in a *reckless* manner, 18–3–205(1)(a), C.R.S.2010, while his third degree assault conviction required evidence that he used a deadly weapon in a *criminally negligent* manner, 18–3–204(1)(a) [1]

A person acts recklessly when he or she "*consciously* disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." 18–1–501(8) (emphasis added). That is, a person acts recklessly despite being aware of a risk or circumstance. A person acts with criminal negligence when, "through a gross deviation from the standard of care that a reasonable person would exercise, he [or she] *fails to perceive* a substantial and unjustifiable risk that a result will occur or that a circumstance exists." 18–1–501(3) (emphasis added). That is, a person acts in a criminally negligent manner when, by virtue of his or her own unreasonable conduct, he or she is unaware of a risk or circumstance.

Esparza asserts that a person cannot simultaneously perceive a substantial and unjustifiable risk of injuring another person and *not* perceive that same substantial and unjustifiable risk; thus, it is logically impossible for a person to possess both a reckless and a negligent mens rea at the same time. He contends that because the jury's finding of a reckless mens rea for the vehicular assault negates the criminally negligent mens rea for the third degree assault, the two verdicts are inconsistent. I agree.

A person can be prosecuted for multiple crimes where his or her conduct establishes the commission of more than one crime. *People v. Beatty*, 80 P.3d 847, 853 (Colo.App. 2003). Generally, consistency among verdicts is not necessary; however, where a defendant is found guilty of two crimes and an element of one crime negates an element of another crime, guilty verdicts on both crimes are legally and logically inconsistent and should not be sustained. *People v. Frye*, 898 P.2d 559, 569 n. 13 (Colo.1995). Inconsistency is generally some logical impossibility which can arise from either factual or legal considerations. *Id.* at 567 n. 9.

I conclude that a defendant cannot have both a reckless mens rea and a negligent mens rea with respect to the same conduct. *Id.*

Nevertheless, relying on *Candelaria v. People*, 148 P.3d 178, 182–83 (Colo.2006), and *People v. Sanchez*, 253 P.3d 1260, 1264 (Colo. App.2010), the People maintain that convictions for two crimes arising from the same act are not necessarily inconsistent solely because each crime requires a different mental state. I conclude that both cases are distinguishable.

In *Candelaria*, the supreme court concluded that abundant evidence supported the conclusion that the defendant and those in his car specifically intended to kill one individual, thereby supporting a conviction for murder after deliberation, while other evidence supported the conclusion that the defendant and his confederates fired numerous shots in the direction of other individuals they did not know, thereby supporting the conclusion that the defendant acted with extreme indifference as to those victims. *Candelaria*, 148 P.3d at 183. Here, in contrast, the reckless and negligent mental states are inconsistent with one another because the conduct was directed at the same victim.

In *Sanchez*, a division of this court concluded that defendant's convictions for attempted first degree murder and first and

---

1. A person commits the crime of vehicular assault when he or she (1) recklessly operates or drives a motor vehicle; and (2) is the proximate cause of serious bodily injury to another. 18–3–205(1)(a). Vehicular assault is a class five felony. 18–3–205(1)(c), C.R.S.2010.

second degree assault were not inconsistent because an intent to cause serious bodily injury or bodily injury is not necessarily an intent to cause only serious bodily injury or bodily injury. Thus, the division concluded that the defendant could have possessed the intent to cause death, serious bodily harm, and bodily harm at the same time. *Sanchez,* 253 P.3d at 1264. Here, however, Esparza could not have acted recklessly and negligently with respect to the same conduct because the mens reas for those offenses are logically inconsistent.

Having concluded that Esparza's convictions for vehicular assault and third degree assault are inconsistent, I next consider the appropriate remedy.

In *Candelaria,* the supreme court noted that because it had concluded that the jury findings there were neither logically nor legally inconsistent, it did not need to decide the appropriate remedy for a jury's special findings that could not logically be based on the same evidence. *Candelaria,* 148 P.3d at 183. In *Frye,* the supreme court noted that when verdicts are found to be logically and legally inconsistent, they "should not be sustained." *Frye,* 898 P.2d at 569 n. 13. However, the *Frye* court did not explain what the appropriate remedy would be in such circumstances. Instead, the court cited numerous cases in which different remedies had been provided. *Compare Thomas v. United States,* 314 F.2d 936, 939 (5th Cir.1963) (only one guilty verdict will be sustained), *and People v. Atkins,* 844 P.2d 1196, 1202 (Colo. App.1992) (facially inconsistent convictions cannot result in the conviction of more than a single offense or the imposition of more than a single punishment), *abrogated by Candelaria,* 148 P.3d at 183, *with United States v. Daigle,* 149 F.Supp. 409, 414 (D.D.C.) (two inconsistent guilty verdicts may not stand), *aff'd,* 248 F.2d 608 (D.C.Cir.1957), *and State v. Speckman,* 326 N.C. 576, 580, 391 S.E.2d 165, 168 (1990) (where there are inconsistent verdicts, case must be remanded for new trial on both charges).

Nevertheless, I conclude that it is significant that both the supreme court and court of appeals in *Candelaria* cited *People v. Glover,* 893 P.2d 1311 (Colo.1995), where the supreme court held that when multiple convictions against a defendant may not stand, certain convictions should be vacated in a manner that will maximize the defendant's sentence in order to give the most effect to the jury's verdict. Here, I would reach that result by affirming Esparza's conviction for vehicular assault and vacating his conviction for third degree assault, since the former conviction resulted in a six-year sentence, while the latter resulted in a two-year sentence. This conclusion is supported by the record, which shows that there was sufficient evidence that Esparza drove his vehicle in a reckless manner, thereby causing his passenger serious bodily injury.

Accordingly, I would affirm Esparza's conviction of vehicular assault, while I would vacate his conviction for third degree assault on the basis that it is legally and logically inconsistent.

## IV. Merger

Esparza next contends that the trial court erred when it failed to vacate five lesser offense convictions under the doctrine of merger. As noted above, I agree with the analysis of the two merger issues addressed by the majority in part III of its opinion. However, because I would not reverse Esparza's convictions for second and third degree assault, I address two of his three other merger contentions. Specifically, I reject his contention that his vehicular assault conviction regarding one victim should merge into his second degree reckless assault conviction regarding the same victim, and I reject his contention that his second degree reckless assault conviction should merge into his first degree extreme indifference assault conviction. Finally, I would not reach his contention that his third degree assault conviction regarding the passenger in his car should merge into his vehicular assault conviction regarding the same person because I would vacate the third degree assault conviction, as discussed above in part III of my opinion.

### A. Standard of Review

I agree with the majority that we review de novo whether merger applies to criminal offenses because it is an issue of statutory

interpretation. *People v. Torres*, 224 P.3d 268, 275 (Colo.App.2009). I also agree with the majority's recitation of the applicable substantive law.

### B. Analysis

#### 1. Second Degree Reckless Assault and Vehicular Assault

Esparza asserts that his vehicular assault conviction regarding the victim driving the other car should merge into his second degree reckless assault conviction regarding the same victim. I disagree.

A person commits second degree reckless assault when he or she (1) recklessly (2) causes injury to any person (3) by means of a deadly weapon. 18–3–203(1)(d). As relevant here, second degree reckless assault is a class four felony. 18–3–203(2)(b), C.R.S.2010.

As noted, a person commits the crime of vehicular assault when he or she (1) recklessly operates or drives a motor vehicle and (2) is the proximate cause of serious bodily injury to another. 18–3–205(1)(a). Vehicular assault is a class five felony. 18–3–205(1)(c), C.R.S.2010.

In *Stewart*, 55 P.3d at 117–18, the Colorado Supreme Court addressed two issues related to second degree reckless assault and reckless vehicular assault, but did not address the issue of merger. First, the court held that the offenses of second degree reckless assault with a deadly weapon, when the deadly weapon is a car, and reckless vehicular assault do not proscribe identical conduct and therefore conviction of both offenses did not violate the defendant's right to equal protection. *Id.* The court reasoned that the two statutes target different conduct and contain different elements of causation. *Id.* at 116. Second, the court held that the legislature did not intend to limit prosecution to the specific statute of vehicular assault in place of the general statute of second degree reckless assault. *Id.* at 118.

Comparing the elements of the statutes, the court made three distinctions. First, the court held that vehicular assault requires the defendant to drive or operate a motor vehicle, while second degree assault lacks any such requirement. *Id.* at 115–16. Second,

the court differentiated vehicular assault's "proximate cause" requirement from second degree reckless assault's element of "causing" serious bodily injury. *Id.* at 116. Third, another primary difference between the statutes is "the means by which the defendant allegedly caused serious bodily injury." *Id.* Specifically, the court held that for vehicular assault, the defendant's reckless driving or operation of a motor vehicle must have proximately caused serious bodily injury, while second degree assault requires a defendant to use a "deadly weapon," and according to the court, a motor vehicle is not always a deadly weapon. *Id.* at 116–17.

The *Stewart* court did not discuss the issue of merger, but I do so now.

Employing the strict elements test, *see People v. Garcia*, 251 P.3d 1152, 1161 (Colo. App.2010), I conclude that vehicular assault is not a lesser included offense of second degree reckless assault. Second degree assault, as charged here, consists of three elements: (1) a reckless act; (2) causing injury to another person; (3) by means of a deadly weapon. 18–3–203(1)(d). Vehicular assault consists of (1) a reckless act; (2) proximately causing serious bodily injury to another person; (3) by means of operating or driving a motor vehicle. 18–3–205(1)(a).

Thus, vehicular assault requires the actor to operate or drive a motor vehicle, while second degree reckless assault as charged here did not require Esparza to use a motor vehicle. Also, second degree assault requires the use of a deadly weapon, while vehicular assault does not. As a result, each offense contains an element distinct from the other, and therefore, the strict elements test is not satisfied. Accordingly, vehicular assault is not a lesser included offense of second degree reckless assault.

#### 2. First Degree Assault with Extreme Indifference and Second Degree Reckless Assault

Esparza next argues that his second degree reckless assault conviction should merge into his first degree extreme indifference assault conviction. I disagree.

A person commits the crime of assault in the first degree with extreme indifference when (1) under circumstances manifesting extreme indifference to the value of human life, (2) he or she engages in conduct which creates a grave risk of death to another person and (3) thereby causes serious bodily injury to any person. 18–3–202(1)(c), C.R.S. 2010. First degree assault with extreme indifference is a class three felony. 18–3–202(2)(b), C.R.S.2010.

A person commits the crime of second degree reckless assault when he or she (1) recklessly causes serious bodily injury to another person (2) by means of a deadly weapon. 18–3–203(1)(d). As relevant here, second degree reckless assault is a class four felony. 18–3–203(2)(b).

A conviction for first degree assault with extreme indifference does not establish every element of second degree reckless assault. Second degree reckless assault requires the actor to use a deadly weapon, but first degree assault with extreme indifference does not have this requirement. Also, first degree assault with extreme indifference requires the actor to act under circumstances manifesting extreme indifference to the value of human life, while second degree reckless assault lacks this element. Thus, each crime requires proof of a fact that the other does not, and, therefore, the two offenses do not merge.

## V. Sentencing

As I noted above, because the majority reverses Esparza's conviction for second degree assault, it does not address his contention that the trial court abused its discretion when it imposed a sentence for a second degree assault conviction to run consecutively to his sentence for his first degree assault conviction. I address and reject that contention.

### A. Standard of Review

An appellate court reviews for an abuse of discretion a trial court's decision to impose consecutive sentences based on a finding that separate evidence supports each conviction. *People v. Bass,* 155 P.3d 547, 554 (Colo.App. 2006).

### B. Analysis

When a defendant is convicted of multiple offenses, a sentencing court has discretion to impose consecutive or concurrent sentences. *People v. Jurado,* 30 P.3d 769, 772 (Colo.App. 2001). However, section 18–1–408(3), C.R.S. 2010, mandates that a trial court impose concurrent sentences for offenses committed against a single victim when the counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical. *Jurado,* 30 P.3d at 772–73 (citing *Qureshi v. Dist. Court,* 727 P.2d 45 (Colo.1986)). Where multiple victims are involved, the court may, within its discretion, impose consecutive sentences. 18–1–408(3).

Evidence supporting different crimes is considered identical for purposes of section 18–1–408(3) when the same act or acts gave rise to both charges. *People v. Dixon,* 950 P.2d 686, 689 (Colo.App.1997). Whether evidence supporting multiple offenses is identical turns on "whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different." *Juhl v. People,* 172 P.3d 896, 902 (Colo.2007). The court must analyze the evidence to determine if the separate convictions were based on more than one distinct act, and if so, whether multiple acts were separated by time and place. *Id.* at 901. Further, the trial court must consider whether multiple victims were involved. 18–1–408(3).

Here, the jury returned one verdict form finding Esparza guilty of first degree assault for two victims. The jury also returned one verdict form finding Esparza guilty of second degree assault regarding the victim driving the other car. Esparza received consecutive sentences of twenty-four years for the count of first degree assault and six years for the count of second degree assault.

At the sentencing hearing, the trial court addressed Esparza's request for concurrent sentences regarding the two counts, and stated, "By law, I do not think I can do that for two reasons. First . . . a person convicted of

two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that the sentences are served consecutively rather than concurrently." The trial court further found that "count one [first degree assault] contains an additional victim and therefore ... *Juhl* does not apply" and "[the two counts] must be considered sentenced separately—consecutively."

I agree with the trial court that section 18–1–408(3) required consecutive sentences. Crimes of violence are "separate" and thus require consecutive sentencing when the evidence supporting the convictions is not identical within the meaning of section 18–1–408(3). *Jurado,* 30 P.3d at 773.

Here, the counts of first degree assault and second degree assault are not supported by identical evidence. First degree assault with extreme indifference requires the elements of extreme indifference to the value of human life, knowingly engaging in conduct which creates a grave risk of death to another person, and thereby causing serious bodily injury to any person." 18–3–202(1)(c). Second degree reckless assault requires the elements of recklessly causing serious bodily injury to any person by means of a deadly weapon. 18–3–203(1)(d). Here, identical evidence may support most elements of both offenses, but proof of the element of serious bodily injury requires separate evidence for each victim. Accordingly, I would conclude the trial court did not abuse its discretion when it determined that section 18–1–408(3) required it to impose consecutive sentencing.

## VI. Conclusion

Accordingly, while I agree with the majority's conclusion that sufficient evidence supports Esparza's conviction for first degree assault and its resolution of the two merger issues it addresses, the jury instruction issue, and the need to correct the mittimus, I respectfully dissent in part because I would affirm Esparza's conviction for second degree assault as supported by sufficient evidence and vacate his conviction for third degree assault as legally and logically inconsistent with his conviction for vehicular assault. Because of my disagreement with the majority,

I would also address and reject two of Esparza's three other merger arguments, as well as his contention that the trial court abused its discretion in imposing consecutive sentences for his convictions for first and second degree assault.