**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Gregory J. GABLE, Defendant-Appellant.**

No. 80CA0073.

Colorado Court of Appeals,
Div. I.

March 4, 1982.

Rehearing Denied March 25, 1982.

Certiorari Denied May 24, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Morgan Rumler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Keene, Munsinger & Stuckey, Stephen M. Munsinger, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Defendant appeals his judgment of conviction of conspiracy to dispense dangerous

drugs. Defendant was one of 23 individuals charged in a large-scale conspiracy to dispense dangerous drugs, most of whom pled guilty. However, defendant pled not guilty and was tried together with one other co-defendant, Chuck Ginnis, a/k/a Chuck Reick, on November 13, 1979. We affirm the judgment.

The hub of the conspiracy consisted of two brothers who arranged for the delivery of large shipments of marijuana to Colorado. These individuals then distributed the drug to a large array of secondary participants, of which defendant was one, who resold the drugs. The prosecution's evidence consisted primarily of tape recorded telephone conversations containing statements by defendant, and statements about defendant by co-conspirators.

## I. WIRETAP

### A. THE EXHAUSTION REQUIREMENT

Defendant's first contention is that there was an insufficient showing in the application for the wiretap that the police exhausted other investigative techniques prior to wiretapping. We disagree.

Section 16–15–102(2)(c), C.R.S.1973 (1978 Repl. Vol. 8), which is similar to 18 U.S.C.A. § 2518(1)(c) (1970), requires that every application for a wiretap order include a "complete statement as to whether or not other investigative procedures have been tried and failed, or why they reasonably appear to be unlikely to succeed if tried, or to be too dangerous." This language does not require that wiretapping be used only as a last resort, and the requirements of this section are satisfied if the application "inform[s] the authorizing judge of the difficulties encountered, and the lack of success in using conventional investigatory methods." *People v. Milnes*, 186 Colo. 409, 417–18, 527 P.2d 1163, 1167 (1974), quoting *United States v. Staino*, 358 F.Supp. 852 (E.D.Pa.1973).

 Contrary to defendant's contention, the affidavit which accompanied the request for the wiretap satisfied the require-

ments of § 16–15–102(2)(c), C.R.S.1973 (1978 Repl. Vol. 8). Detective Pietrafeso's affidavit stated that four of five informants on which the application was based specifically refused to testify at trial because they feared reprisal. According to the affidavit, three of the informants also stated that the main participants in the conspiracy rarely came into contact with the drugs personally, and were very careful not to deal with strangers, thus limiting the effectiveness of search warrants and undercover agents. In fact, on at least one occasion, one informant had tried, and failed, to introduce a newcomer to the principals of the conspiracy.

The affidavit also alleged that periodic surveillance of suspects, seizure of evidence when possible, and controlled purchasing of drugs from suspects had been tried, but had failed to produce sufficient evidence to prosecute the principal conspirators or their underlings. The affidavit also detailed the conspirators' criminal records, to show their familiarity with normal investigative techniques, and sketched the manner of the organization's operation, to show that the key participants were insulated from conventional investigations.

The statements set forth in the wiretapping applications are more than sufficient to satisfy the exhaustion requirement. *See People v. Milnes, supra; United States v. Clerkley*, 556 F.2d 709 (4th Cir. 1977), *cert. denied*, 436 U.S. 930, 98 S.Ct. 2380, 56 L.Ed.2d 775; *United States v. James*, 494 F.2d 1007 (D.C.Cir.1974); *United States v. Mainello*, 345 F.Supp. 863 (E.D.N.Y.1972).

### B. THE WRITING REQUIREMENT

Defendant's second basis for suppression of the intercepted communications lies in his contention that the trial court failed to comply with § 16–3–303(2), C.R.S.1973 (1978 Repl. Vol. 8), which requires that any sworn testimony, taken to supplement the written affidavit presented to support issuance of a search warrant, be reduced to writing, and that, as a result, the wiretap order was invalid. We agree with the trial court that suppression was unwarranted.

█ The trial court issued its wiretap order on the basis of an 84 page affidavit and testimony received at two informal hearings, at which the attorney general and the affiant police officer were present. There was no record made of the testimony taken at the two hearings. Therefore, this testimony may not supply the foundation for the wiretap order. *People v. Padilla*, 182 Colo. 101, 511 P.2d 480 (1973). However, the facts which are stated in writing in the affidavit show probable cause for the issuance of the wiretap order and are sufficient to support the trial court's findings.

█ The fact that some portions of an affidavit must be stricken because they are erroneous, or as here, that a portion of the evidence relied on for a finding of probable cause is not properly recorded and may not be considered, does not require the issuing magistrate to ignore the other information supplied by the affidavit. *See People v. Hampton*, 196 Colo. 466, 587 P.2d 275 (1978), *overruled on other grounds, People v. Bannister*, Colo., 619 P.2d 71 (1980); *People v. Padilla, supra; People v. Montoya*, Colo. App., 616 P.2d 156 (1980).

Because the affidavit contained sufficient information showing probable cause for the issuance of the wiretap order, the order was valid, and it was not error to deny defendant's motion to suppress the recorded conversations.

## C. THE DURATION ISSUE

Defendant's third contention is that the wiretap failed to terminate upon the expiration of the authorized time period. We disagree.

The wiretaps which yielded the tape recorded conversations played at trial were in operation for a full 60 days, which included a 30-day initial authorization, and a 30-day extension. Defendant argues that the police's objectives were attained prior to the expiration of the full time and that the wiretaps should have been terminated earlier than they were.

Although § 16–15–102(6), C.R.S.1973 (1978 Repl. Vol. 8), puts an outer limit of 30 days on the duration of a wiretap, and a limit of 30 days on an extension of the initial wiretap order, it also requires that "[n]o order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization . . . ." All the wiretap orders provided for automatic termination of the wiretap, upon accomplishing the objective of the authorization.

█ Where the target of the wiretap is a large scale conspiracy, such as this, courts must be given more latitude to formulate a sufficiently broad wiretap order. *See United States v. Clerkley, supra; United States v. Tortorello*, 480 F.2d 764 (2d Cir. 1973), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86. Where there is continuing conduct and one of the objectives of the wiretap is to identify the scope and participants of the conspiracy, *see, e.g., United States v. Vento*, 533 F.2d 838 (3d Cir. 1976), the permissible duration of the wiretap is necessarily longer than where the investigation concerns only a single criminal episode. *United States v. James, supra.*

█ We agree with the trial court's finding, which is supported by the evidence, that the objectives of the authorization were not achieved prior to the expiration of the full time, and that the wiretaps were properly left in place for the full 60 days.

## D. THE MINIMIZATION ISSUE

Defendant next argues that the interception was not properly minimized as required by § 16–15–102(6), C.R.S.1973 (1978 Repl. Vol. 8). Defendant contends that the police acted unreasonably because they intercepted conversations to which he was a party, even though they had no idea at the time the wiretap commenced, that he was a co-conspirator. We disagree.

Section 16–15–102(6), C.R.S.1973 (1978 Repl. Vol. 8), requires that "[e]very order . . . shall be conducted in such a way as to minimize the interception under this section . . . ." Nearly identical language in the *Federal Omnibus Crime Control & Safe*

*Streets Act of 1968*, 18 U.S.C.A. 2510 et seq. (1970), was interpreted in *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). There, it was stated that: "The statute does not forbid the interception of all non-relevant conversations, but rather instructs the agents to conduct surveillance in such a manner as to 'minimize' the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case." 436 U.S. at 140, 98 S.Ct. at 1724, 56 L.Ed.2d at 179.

■ Factors to consider in determining whether the agents have acted reasonably to minimize the interception include: The nature and scope of the alleged criminal enterprise, the government's reasonable expectations as to the contents of, and parties to the conversations, and the degree of judicial supervision of the wiretap. *United States v. Clerkley, supra.* Other factors that should also be considered include the length of the conversations, *Scott v. United States, supra,* the phase of the investigation, *United States v. Falcone,* 364 F.Supp. 877 (D.N.J.1973) 505 F.2d 478 (3d Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432, whether the parties used coded language, *United States v. James, supra,* and the percentage of calls intercepted which are incriminating, *United States v. Bynum,* 485 F.2d 490 (2d Cir. 1973).

■ Under the circumstances of this case, we agree with the trial court that there was no failure to minimize. First, the conversations introduced at trial were incriminating and tied defendant to the conspiracy which was the target of the surveillance. Second, the scope of the criminal enterprise was alleged to be very broad, and one purpose of the wiretaps was to identify additional conspirators. *See United States v. Vento, supra.* Statements which tend to incriminate and are obtained in a wiretap are not inadmissible merely because the party implicated is not named in the original wiretap affidavit. *United States v. Tortorello, supra.* Moreover, the record shows that there was weekly judicial super-

vision, that the detectives who administered the wiretap received detailed instructions on minimization procedures, and that these minimization procedures were used extensively on a large number of calls.

Therefore, there was no failure to minimize, and the trial court did not err in denying defendant's motion to suppress.

## E. WARRANTLESS ENTRY

■ Defendant contends that the intercepted conversations should have been suppressed because the police did not have, in addition to the wiretap orders, a warrant specifically authorizing the entry to attach the wiretaps. We disagree.

The wiretap orders authorized the tapping of the office telephones of the Denver Comets, a professional volleyball team. In the building where the Denver Comets' office was located, there was a separate room leased by Mountain Bell which housed the telephone service lines for all of the telephones in the building. The tap connections were made in the Mountain Bell room. Entry was achieved with Mountain Bell's consent, and a warrant was unnecessary. *See People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974).

## II. THE INDICTMENT

Defendant contends, without citing authority, that the indictment is fatally defective because the grand jury was improperly instructed as to the admissibility of hearsay statements at trial. Presumably, defendant's theory is that a grand jury might refrain from handing down an indictment if it knows that there is almost no admissible evidence implicating defendant. We find no merit in this argument.

■ Hearsay, and other evidence which would be incompetent if offered at trial, is admissible and may well be the bulk of evidence offered to the grand jury or at the preliminary hearing. *See People v. Quinn,* 183 Colo. 245, 516 P.2d 420 (1973). The purpose of this rule is to insure that an incomplete investigation does not result in the dismissal of cases. *People v. Quinn,*

*supra.* This reasoning militates against instructing a grand jury that hearsay evidence will not be admissible at trial because such an instruction might prevent an indictment.

Defendant's second challenge to the indictment is that it is not supported by the record. Again, we disagree.

■ Initially, we note that defendant has provided us with only a limited portion of the transcript of the grand jury proceedings. However, even this limited portion reveals sufficient facts to support defendant's indictment under the standard of probable cause announced in *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977). *See also People v. Zupancic,* 192 Colo. 231, 557 P.2d 1195 (1977).

Defendant's final attack on the indictment is that it fails to allege the essential facts which constitute the offense of conspiracy. We disagree.

■ An indictment must be definite enough to give defendant sufficient notice of the crime alleged to prepare a defense, *Tracy v. People,* 65 Colo. 226, 176 P. 280 (1917), and to enable defendant to plead its resolution as a bar to subsequent proceedings. *People v. Zupancic, supra.* An indictment must answer the questions of who, what, where, and how. *People v. Zupancic, supra.* But, because of the veil of secrecy surrounding most conspiracies, considerable latitude is allowed in drafting a conspiracy indictment. *People v. Goetz,* 41 Colo.App. 60, 582 P.2d 698 (1978). *Cf. People v. Broncucia,* 189 Colo. 334, 540 P.2d 1101 (1975), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2647, 53 L.Ed.2d 254.

■ Here, the indictment alleged that 17 named defendants, of which defendant was one, conspired to dispense the dangerous drug marijuana, and that various specific overt acts were committed by named individuals on specific dates in furtherance of the conspiracy. In addition, two paragraphs of the indictment contained allegations which put defendant on notice of two specific alleged telephone calls which the People argued indicated his involvement in the conspiracy. These telephone calls between one of the brothers at the center of the conspiracy and defendant, and between the other brother and defendant, took place on March 20 and 21, 1979, and gave defendant notice of who his alleged contact in the organization was, approximately when he was supposed to have committed acts in furtherance of the conspiracy, and the nature of his alleged role in the conspiracy.

Therefore, we find the indictment to be free of the defects suggested by defendant. *See United States v. Sterkel,* 430 F.2d 1262 (10th Cir. 1970).

## III. SEVERANCE AND CONTINUANCE

Defendant contends that his trial should have been severed from that of his co-defendant, and that he should have received a continuance of his trial, because evidence inadmissible against defendant, but admissible against his co-defendant, was presented to the jury.

■ Defendant does not identify any evidence which falls into this category, and the trial court instructed the jury to consider the evidence against each defendant separately. Under these circumstances, we do not find an abuse of discretion by the court in denying defendant's motion for severance. *See Kurtz v. People,* 177 Colo. 306, 494 P.2d 97 (1972).

■ Defendant further argues that his co-defendant and other individuals involved were unavailable to testify on his behalf because at the time defendant went to trial, they were either awaiting trial, or could have withdrawn guilty pleas, and refused to waive their Fifth Amendment rights against self-incrimination. We find no merit in this argument.

■ The granting or denial of a motion for severance and continuance is a matter within the sound discretion of the trial court. *People v. Warren,* 196 Colo. 75, 582 P.2d 663 (1978); *People v. Billington,* 191 Colo. 323, 552 P.2d 500 (1976). And, there being no evidence that the denial of the

severance or continuance resulted in substantial prejudice to the defendant, we find no abuse of discretion here. *See People v. Holcomb*, 187 Colo. 371, 532 P.2d 45 (1975).

Here, co-defendant Ginnis' potential testimony was that defendant had not conspired with him to dispense dangerous drugs. But the People did not allege contact between these two defendants; therefore, the testimony was of slight exculpatory value. *See People v. Billington, supra.* As to the other individuals, there was no indication that any of them would testify or that, if they did testify, that their testimony would in any way be exculpatory on behalf of defendant. In addition, the co-defendant, Chuck Ginnis, also moved for a severance and a continuance on identical grounds, thus assuring that it would be futile to grant either defendant a severance or continuance. Whichever defendant was scheduled to go to trial first would have been in the same position to claim prejudice and obtain yet another continuance. Therefore, there was no abuse of discretion.

## IV. DISCLOSURE OF INFORMANTS

Defendant contends that all five informants in this case were witnesses to the conspiracy and that their identities should have been disclosed to assist defendant in preparing his defense. We disagree.

The applicable legal standard for resolving this issue was succinctly stated in *People v. Korte*, 198 Colo. 474, 475, 602 P.2d 2, 3 (1979):

"When determining whether the identity of a confidential informant should be disclosed, the trial court must balance the needs of law enforcement officials to preserve the anonymity of the informant with the defendant's right to obtain evidence necessary for the preparation of his defense. *People v. Marquez* 190 Colo. 255, 546 P.2d 482 (1976). There is no 'fixed rule' that may be applied with respect to disclosure; rather, each case must turn on its own facts. *See Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Thus, the determination is one that lies within the sound

discretion of the trial court." *Accord People v. Dailey*, Colo., 639 P.2d 1068 (1982).

Whether the informant was a witness to the criminal transaction is just one of many factors to be considered in applying this balancing test. *People v. Marquez*, 190 Colo. 255, 546 P.2d 482 (1976); *People v. McLean*, Colo.App., 633 P.2d 513 (1981). And, no single factor is to be considered a threshold requirement or determinative of disclosure or non-disclosure. *See People v. Del Alamo*, Colo., 624 P.2d 1304 (1981). However, the defendant seeking disclosure must make a minimum showing of necessity, *People v. Marquez, supra*, and mere speculation concerning the need for disclosure will not suffice. *People v. Langford*, 191 Colo. 87, 550 P.2d 329 (1976); *People v. McLean, supra.*

Here, the trial court applied the balancing test to informant C, and found that despite C's participation in the conspiracy, and in several controlled buys for the police, C's identity should not be disclosed. The ruling was conditioned on the prosecution not introducing evidence of the controlled buys, as a means of proving the conspiracy, and we find no abuse of discretion as to informant C.

As to the other four informants, it is not clear whether the trial court applied the balancing test as it should have, or whether it found dispositive the fact that these informants were not witnesses to the overt acts alleged in the indictment. Defendant's brief does not allege that the trial court erroneously failed to apply the balancing test, but asserts that, on balance, the facts of this case warrant disclosure. Nevertheless, we have reviewed the record in light of the balancing factors announced in *People v. Marquez, supra*, and conclude that as to these informants, the trial court was correct in its ruling.

Therefore, the trial court did not abuse its discretion by denying defendant's motion to disclose the identities of the informants or provide tape recordings of conversations between the informant and conspirators other than this defendant.

## V. HEARSAY

Defendant challenges three aspects of the trial court's treatment of taped conversations containing statements by defendant, and by other conspirators concerning defendant. First, defendant contends that hearsay statements of co-conspirators were admitted into evidence even though there was no independent evidence of a conspiracy, or of defendant's participation in the conspiracy. We disagree.

■ There were six taped conversations between defendant and other co-conspirators which implicated defendant in the conspiracy. Defendant's statements in these conversations were not hearsay. The statements of the other parties to the conversations were not introduced to prove the truth of the matter asserted, but were introduced only to place defendant's own statements in context, and make them intelligible to the jury. Thus, these taped conversations were properly admitted. *United States v. Lemonakis*, 485 F.2d 941 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 1587, 39 L.Ed.2d 885; *People v. McShann*, 177 Cal. App.2d 195, 2 Cal.Rptr. 71 (1960); *State v. Spica*, 389 S.W.2d 35 (Mo.1965), *cert. denied*, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312. *See People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787; *People v. Martinez*, 535 P.2d 255 (Colo.App.1975) (not selected for official publication).

To provide a background for these six incriminating conversations, the prosecution introduced many other recorded conversations between other members of the conspiracy. These conversations were hearsay and were properly admitted only if the requirements of the co-conspirator exception were met.

■ One requirement, the only one at issue here, for admitting the hearsay statement of a co-conspirator is that the prosecution must first establish, by independent evidence, that a conspiracy exists and that defendant is a participant. *People v. Braly*, 187 Colo. 324, 532 P.2d 325 (1975). "A judge is not required to find that the evidence proves a conspiracy beyond a reasonable doubt, only that a prima facie case of conspiracy exists." *People v. Anaya*, 545 P.2d 1053, 1059 (Colo.App.1975), (not selected for official publication). Moreover, proof of a conspiracy may be circumstantial and there need be no direct evidence. *People v. Schlepp*, 184 Colo. 28, 518 P.2d 824 (1974).

■ Here, the six non-hearsay conversations in which defendant was a participant, combined with testimony concerning police surveillance, constituted a prima facie showing of a conspiracy, and supported admission of the other conversations between co-conspirators. There was testimony that police observed a delivery of two large plastic bags, suspected to contain marijuana, to one of the conspirator's houses, and that, on at least one occasion, several conspirators "burned" police surveillance by taking evasive action. In addition, the conversations in which defendant participated are prima facie evidence that he played an active role in inspecting drug supplies, distributing drug samples to potential buyers, accepting delivery of drugs from the hub of the conspiracy, and selling drugs.

Therefore, the trial court did not err by admitting the recorded conversations of co-conspirators as evidence.

Defendant's second and third challenges to the trial court's treatment of the taped conversations concern the procedures used. We find no error.

■ Prior to the independent showing that a conspiracy existed, the trial court allowed the tape recordings to be played to the jury, but ruled that the tapes would not be admitted into evidence until the prosecution made the independent showing required by the co-conspirator exception. The recordings were played without giving any cautionary instruction to the jury that they should not be considered if there was no independent evidence of a conspiracy, and the trial court ruled that it would not give such an instruction unless exclusion of the recordings became necessary. These procedures were approved in *People v. Braly, supra*, and did not constitute error.

## VI. VOICE IDENTIFICATION

Defendant contends that there was insufficient foundation for Detective Pietrafeso's voice identification. We disagree.

A voice heard over the telephone may be identified by one who hears the voice at any time, including subsequent to the call. *United States v. Cox*, 449 F.2d 679 (10th Cir. 1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136; *Husar v. People*, 178 Colo. 300, 496 P.2d 1035 (1972). In addition, a voice may be identified by circumstantial evidence such as other calls in which the speaker identified himself, or subsequent conduct which is consistent with the speaker's words. *United States v. Vento, supra*. Uncertainty as to the identity of a voice reflects on the weight to be given the evidence, and not its admissibility. *United States v. Rizzo*, 492 F.2d 443 (2d Cir. 1973), *cert. denied*, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665.

Here, Detective Pietrafeso, who identified defendant's voice on the telephone, heard defendant's voice in a face-to-face conversation after the telephone call and testified that the voice in the incriminating calls was defendant's. The identification was also based on a large quantity of circumstantial evidence. The speaker in some of the calls identified himself as Greg, the defendant's first name, and the other participants in the calls also referred to the speaker as Greg. The voice was also compared by the detective to other calls in which defendant's full name was given. Additionally, defendant's job for the Denver Comets, which included answering the telephone, gave the detective ample opportunity to hear defendant's voice on the telephone.

Defendant argues that the 60 to 70 telephone calls used to identify defendant, wherein defendant answered the telephone as part of his job and identified himself, were improper foundation for the identification because he was unaware that the prosecution would rely on these conversations at trial. We find no merit in this argument; defendant was given full opportunity to review every tape recorded conversation, and the prosecution did not rely solely on these other conversations.

## VII. USE OF THE TRANSCRIPTS

Defendant argues that the typed transcripts of the tape recorded conversations were prejudicial to defendant because there were initials on the transcripts which purported to identify the various speakers. We disagree.

Accurate transcriptions of the sound recordings are admissible to assist the jury in following the recordings while they are played, *People v. Coca*, 40 Colo.App. 440, 580 P.2d 1258 (1978), and the trial court instructed the jury that only the recordings were evidence, and that any discrepancies between the recordings and the transcriptions should be resolved in favor of the recording. In addition, the detective identified the voices on the tapes during his testimony, and the transcripts were used merely to prevent the jury from becoming confused. Thus, there was no error because of the use of transcripts.

The judgment is affirmed.

PIERCE and SMITH, JJ., concur.