2015 COA 140

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Chester Neal SMALLEY, Defendant–
Appellant.**

**Court of Appeals No. 13CA0478**

Colorado Court of Appeals,
Div. III.

Announced October 8, 2015

Cynthia H. Coffman, Attorney General, William G. Kozeliski, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by CHIEF JUDGE LOEB

¶ 1 Defendant, Chester Neal Smalley, appeals the judgment of conviction and sentence entered on a jury verdict finding him guilty of possession of a weapon by a previous offender, a class 6 felony. We affirm the

judgment, vacate the sentence, and remand for resentencing and correction of the mittimus.

## I. Background

¶2 In October 2011, Smalley was living with a woman named Anaiah Mitten in a house that she owned. Mitten and others who spent time in the house were involved in drug activity. Smalley had two previous felony convictions.

¶3 On October 25, 2011, police stopped Smalley and Mitten as they were driving away from the house. Mitten was arrested immediately on charges unrelated to this case. Smalley was arrested later that day after police found drugs in the car. They remained in jail until November 1.

¶4 On October 27, police returned to the house and saw that the front door was open and damaged. They obtained Mitten's consent for them to clear the house, and they found drug paraphernalia inside. The police returned with a warrant the following day and thoroughly searched the house. They found a police scanner and .45 caliber ammunition in the living room. In the bedroom closet, next to male clothing, they found a shoulder holster, a gun-cleaning kit, a bullet-proof vest, and a "tactical" vest containing ammunition and three knives.

¶5 On October 29, Smalley made a phone call from jail to a woman named Jennifer Dressler. The call was recorded. Dressler informed him that his ex-wife and another man had broken into the house "to go get your stuff" before the police searched it. The call continued:

Smalley: Oh, okay, okay, so she got my stuff then?

Dressler: She got your piece.

Smalley: Ok, cool, cool. Cause that's all I need to know.

Dressler: I don't know if she grabbed other stuff. I wasn't with them when they did it.

Smalley: Well, as long as that's safe then, you know, I'm cool.

Smalley also referred to the item taken as a "black case," and said it was "a big relief"

that his ex-wife had removed it from the house.

¶6 Smalley was charged with two counts of felony possession of a weapon by a previous offender—one count for a firearm and one count for a knife. The charged time period for both counts was October 25–28, 2011.

¶7 At trial, the prosecution introduced this recorded phone call as evidence that Smalley had a gun in the house when he was arrested on October 25. Other evidence to support the firearm count included:

- a recorded call from Smalley to his daughter, while he was still in jail, in which he explained that his ex-wife got his "black case" and that was "good";
- a recorded call from a detective to Smalley, in which Smalley stated, in response to a question by the detective about a .45 caliber handgun in connection with this case, that "I can't admit that there was [a gun], because I'm a felon. You know, I'm gonna be straight up with you. It got stolen";
- pictures from a digital camera found in the tactical vest containing (1) a picture of a .45 caliber pistol alongside a pair of sunglasses and (2) a picture of Smalley wearing what appear to be the same sunglasses; and
- testimony from a correctional officer who overheard Smalley tell another inmate, "I hide my shit at the next door neighbor's."

¶8 Smalley argued that any gun he may have possessed was stolen before the charged time period. He raised an affirmative defense only to the knife count, arguing that he possessed the knife to protect himself from two men who had burglarized his home the year before.

¶9 The jury acquitted Smalley on the knife count but convicted him on the firearm count. The court entered a judgment of conviction for one count of possession of a weapon by a previous offender, a class 6 felony. The court imposed an aggravated prison sentence of three years in the custody of the Department of Corrections (DOC) and twenty-four months mandatory parole.

¶ 10 On appeal, Smalley contends that his conviction must be reversed because the trial court erred by (1) admitting hearsay statements by Dressler on the recorded phone call; (2) allowing the prosecution to rely on Dressler's statements for an improper hearsay purpose in closing argument; and (3) giving the jury unfettered access to the recorded call during deliberations. He also contends that he is entitled to resentencing because the court did not afford him an opportunity to speak on his own behalf at sentencing. Finally, he requests correction of the mittimus to reflect that he was convicted of a class 6, rather than a class 5, felony, with a mandatory parole period of 12 months instead of 24 months.

¶ 11 For the reasons set forth below, we reject Smalley's contentions of error at trial and, therefore, affirm his conviction. However, we agree that he is entitled to resentencing and correction of the mittimus.

## II. Admissibility of Dressler's Statements

¶ 12 Smalley contends that the trial court erred in admitting the recording of his phone call to Dressler because Dressler's statements were hearsay. He argues that the court's admission of those statements violated both the rules of evidence and his rights under the Confrontation Clause of the Colorado Constitution, article II, section 16. We conclude that the court properly admitted Dressler's statements as nonhearsay.

### A. Trial Court Proceedings

¶ 13 On the morning of trial, the court heard arguments from both parties about the admissibility of the recorded call between Dressler and Smalley. Defense counsel acknowledged that Smalley's own statements were admissible, but he objected to the admission of Dressler's statements on the basis that they constituted hearsay. He also stated his desire to "confront and cross-examine" Dressler about whether someone broke into Smalley's home and what she meant by the word "piece."

¶ 14 The prosecutor responded that he was not offering Dressler's statements for their truth, but only to "put Mr. Smalley's own statements in context." He argued:

Obviously, we are introducing those statements only for Mr. Smalley's state of mind when Ms. Dressler says someone got in and got your black case. It's not being offered for the truth. We don't care if [Smalley's ex-wife] went in and got the black case. We don't care if it's still there. We don't care what that is. All we want is Mr. Smalley's statement saying, That's cool. I was really worried about it.

¶ 15 The court stated that, before playing the recording, it would instruct the jury that Dressler's statements were offered not for their truth but simply to give context to Smalley's statements.

¶ 16 When the prosecutor moved to admit the Dressler call during a detective's trial testimony, defense counsel renewed his hearsay objection and asked the court to provide a limiting instruction. The court gave the following instruction to the jury:

On the tape, . . . you'll hear two voices. One will be the defendant's voice and the other is this woman's voice. Whatever the woman's voice says is not being offered for the truth of the matter asserted. Hearsay is an out-of-court statement made by a person that's not here to testify and be cross-examined. You can use that information to provide context for what Mr. Smalley is saying, but you can't use that information as facts alleged, in other words.

The court then admitted the recorded call in its entirety.

¶ 17 After the recording was played for the jury, the detective testified without objection that the word "piece" was common slang for a gun.

### B. Standard of Review and Preservation

#### 1. Rules of Evidence

¶ 18 We review a trial court's evidentiary rulings for an abuse of discretion. *Davis v. People*, 2013 CO 57, ¶ 13, 310 P.3d 58. A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *People v.*

*Esparza–Treto,* 282 P.3d 471, 480 (Colo.App. 2011).

¶ 19 Smalley preserved his objection under the rules of evidence by objecting on the basis of hearsay at trial. Accordingly, we apply the harmless error standard to determine whether any error in admitting Dressler's statements under the rules of evidence warrants reversal. *Davis,* ¶ 13.

### 2. Confrontation Clause

¶ 20 We review de novo whether a trial court violated a defendant's Confrontation Clause rights. *People v. Phillips,* 2012 COA 176, ¶ 85, 315 P.3d 136.

¶ 21 The parties dispute whether Smalley preserved his objection based on the Colorado Constitution's Confrontation Clause. Smalley contends that he preserved this argument because defense counsel stated his desire to "confront and cross-examine" Dressler when he raised the hearsay objection at trial. Therefore, he urges us to apply the constitutional harmless error standard for reversal. The People contend that Smalley did not preserve this argument because defense counsel did not specifically reference the Colorado Constitution. They argue that we should not address a claim under the Colorado Constitution raised for the first time on appeal.

¶ 22 We will assume that Smalley preserved the Confrontation Clause argument. Nevertheless, as set forth below, we conclude that Smalley's confrontation rights were not implicated because Dressler's statements were nonhearsay.

### C. Applicable Law

¶ 23 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Unless an exception applies, hearsay statements are generally inadmissible. CRE 802; *Golob v. People,* 180 P.3d 1006, 1010 (Colo.2008).

¶ 24 A defendant's own out-of-court statements, however, are not hearsay when offered against the defendant. CRE 801(d)(2)(A); *People v. Berger–Levy,* 677 P.2d 351, 352 (Colo.App.1983).

¶ 25 Statements made by other people in conversation with a defendant are not hearsay if they are offered only to provide context for the defendant's statements and not for the truth of the matter asserted. *People v. Arnold,* 826 P.2d 365, 366 (Colo. App.1991); *People v. Gable,* 647 P.2d 246, 255 (Colo.App.1982); *see also People v. Huckleberry,* 768 P.2d 1235, 1242 (Colo.1989) (victim's out-of-court statements were not hearsay because they were offered and admitted only "to provide background necessary for a full understanding" of a conversation between the defendant and a testifying witness).

¶ 26 In *Gable,* 647 P.2d at 255, a division of this court held that recorded conversations between the defendant and others were properly admitted as nonhearsay. The court first noted that the defendant's own statements were not hearsay. *Id.* The court then concluded that the other participants' statements were not hearsay because they "were not introduced to prove the truth of the matter asserted, but were introduced only to place defendant's own statements in context, and make them intelligible to the jury." *Id.*

¶ 27 Similarly, in *Arnold,* 826 P.2d at 366, another division of this court held that recorded conversations between the defendant and confidential informants were properly admitted. The division concluded that "[t]he utterances of others contained on the tape ... are not hearsay because they were offered for the sole and limited purpose of putting the responses of the defendant in context and making them understandable to the jury, and not for the truth of their content." *Id.* The division also noted that the trial court "adequately instructed the jury as to the limited purposes for which the non-party utterances on the tape might be considered." *Id.*

¶ 28 The admission of hearsay implicates a defendant's confrontation rights under the Colorado Constitution. *See Phillips,* ¶ 84 (State Confrontation Clause bars admission of nontestimonial hearsay). However, the Confrontation Clause does not ap-

ply to nonhearsay statements. *People v. Robinson*, 226 P.3d 1145, 1151 (Colo.App. 2009); *Arnold*, 826 P.2d at 366.

### D. Analysis

¶ 29 We conclude that the court properly admitted Dressler's statements as nonhearsay. It did not matter whether Dressler was lying when she told Smalley that his ex-wife had broken into his house and removed his "piece." Rather, what mattered was Smalley's expression of relief upon hearing this information. In the context of Dressler's statements, a jury could understand Smalley's response as an admission that he (1) owned a gun and (2) had left the gun in his house when he was arrested on October 25, which was within the time period that the prosecution alleged he possessed a firearm. These inferences could be drawn from Smalley's statements regardless of whether it was actually true that his ex-wife later broke in and removed his gun. Thus, Dressler's statements were offered not for their truth, but rather to give context to Smalley's statements and make them intelligible to the jury. *See Arnold*, 826 P.2d at 366; *Gable*, 647 P.2d at 255.

¶ 30 Moreover, the court instructed the jury that it could only use Dressler's statements to provide context for Smalley's statements, and not as "facts alleged." *See Arnold*, 826 P.2d at 366. We conclude that this instruction adequately communicated the limited nonhearsay purpose for which the jury could consider the statements, and we presume that the jury followed the court's instruction. *See People v. McKeel*, 246 P.3d 638, 641 (Colo.2010).

¶ 31 We reject Smalley's argument that, despite articulating a nonhearsay purpose before trial, the prosecutor signaled his intent to use Dressler's statements for their truth during his opening statement. The prosecutor described the Dressler call as follows:

[Smalley] calls Jennifer Dressler and expresses concern about his piece, which you'll hear is vernacular for a gun. He expresses concern about the location of that piece and location of a black case and he expresses relief when he hears that it's

been taken out of the residence before the police searched it.

This description properly drew the jury's attention to Smalley's statements, not Dressler's. By focusing on Smalley's expression of "concern" and "relief," the prosecutor indicated that he would use the Dressler call for precisely the nonhearsay purpose he articulated before trial.

¶ 32 We also reject Smalley's contention that we should consider the prosecutor's closing arguments in determining whether the trial court erred in admitting Dressler's statements. Whether the court erred by permitting improper closing arguments is a separate issue that we address below. However, Smalley did not object to the prosecutor's arguments at trial, and "we fail to perceive how .... a proper ruling admitting statements for a nonhearsay purpose may be rendered erroneous by their subsequent misuse." *Robinson*, 226 P.3d at 1153. "We therefore evaluate the propriety of the trial court's ruling in light of the circumstances present when the evidence was offered." *Id.*

¶ 33 When the court admitted the recorded call, there was no indication Dressler's statements were being offered to prove the truth of the matter asserted. Rather, the prosecutor's pretrial argument and opening statement indicated that Dressler's statements were offered solely to provide context for Smalley's statements, and the court instructed the jury accordingly. *See Arnold*, 826 P.2d at 366; *Gable*, 647 P.2d at 255. Under these circumstances, the court did not abuse its discretion in admitting Dressler's statements for that limited nonhearsay purpose.

¶ 34 Because we conclude that Dressler's statements were properly admitted as nonhearsay, Smalley's confrontation rights were not implicated by the admission of this evidence. *See Robinson*, 226 P.3d at 1151; *Arnold*, 826 P.2d at 366.

### III. Prosecutor's Closing Arguments

¶ 35 Smalley next contends that the trial court erred in permitting the prosecutor to use Dressler's statements for the truth of the matter asserted in closing arguments. We conclude that any improper argument did not rise to the level of plain error.

### A. Standard of Review and Applicable Law

■ ¶ 36 When reviewing a claim of prosecutorial misconduct, we engage in a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo.2010); *People v. McMinn*, 2013 COA 94, ¶ 59, —— P.3d ——. We first determine whether the prosecutor's challenged conduct was improper under the totality of the circumstances. *Wend*, 235 P.3d at 1096. We then consider whether the conduct warrants reversal according to the proper standard of review. *Id.*

■ ¶ 37 Where, as here, the defendant did not object to the prosecutor's statements at trial, we review whether those statements require reversal under the plain error standard. *Id.* at 1097. Plain error is error that is both obvious and seriously prejudicial. *People v. Ujaama*, 2012 COA 36, ¶¶ 42–43, 302 P.3d 296. "To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *McMinn*, ¶ 58. Prosecutorial misconduct in closing argument rarely constitutes plain error. *Id.*

■ ¶ 38 A prosecutor may argue the facts in evidence and reasonable inferences drawn from those facts. *People v. Munoz–Casteneda*, 2012 COA 109, ¶ 20, 300 P.3d 944. However, where the court admits evidence for a limited purpose, the prosecutor must restrict the use of that evidence to the purpose for which it was admitted. *See Yusem v. People*, 210 P.3d 458, 464 n.8 (Colo.2009); *People v. McBride*, 228 P.3d 216, 223 (Colo. App.2009).

### B. Whether the Argument Was Improper

■ ¶ 39 We first examine whether the prosecutor's closing argument was improper under the totality of the circumstances. Smalley contends that the prosecutor, in his rebuttal closing argument, used Dressler's statements not solely to provide context for Smalley's statements, but also for the truth of the matter asserted. We examine the specific portions of the rebuttal argument challenged on appeal below.

¶ 40 First, however, we note that the prosecutor devoted a significant portion of his initial closing argument to the Dressler call. Throughout that argument, he properly focused on Smalley's own statements and restricted his use of Dressler's statements to their nonhearsay purpose. The prosecutor stated that "[i]t all starts with defendant's own statements," and played the recording of the call. He then focused on Smalley's reaction to Dressler's statements:

> It's interesting that when [Dressler] says Kim's got your piece he doesn't say something like, what's a piece? What are you talking about? All he does is express relief. Okay. Cool, cool. He doesn't say, oh, piece? You mean my tools? No. All he does is express relief that that [.]45–caliber handgun, that piece was taken out of his home before the police search it on October 28.

The prosecutor continued to emphasize Smalley's expression of relief upon hearing that his "piece" had been removed from the house. Thus, throughout his initial closing argument, the prosecutor consistently and properly used Dressler's statements for the limited purpose of providing context for Smalley's responses.

¶ 41 We now turn to the three challenged portions of the rebuttal closing argument. Smalley first contends that the following comments by the prosecutor improperly focused on Dressler's words:

> [W]hen there's that call from Mr. Smalley from the jail to Jennifer Dressler and she says they got a piece, what word did she use? Does she say we got *a piece* out of the apartment? No. We got—well, Kim got *your piece*. Kim got *your piece*.

(Emphasis added.)

¶ 42 We disagree that, in context, this argument was improper. The prosecutor made these comments as part of a larger discussion about the meaning of "possession." The fact that Dressler said "*your* piece" was relevant to show possession because of how Smalley responded. As the prosecutor noted in his initial closing argument, Smalley did not

react with confusion or protest that the "piece" was not his. Instead, he expressed relief and said he had been worried about it. The jury could properly infer from this response that Smalley acknowledged the gun was his. Thus, the prosecutor focused on Dressler's words only because they helped the jury understand the meaning of Smalley's statements on the call. We conclude that this portion of the rebuttal argument, when viewed in context, did not misuse Dressler's statements as hearsay.

¶ 43 Second, Smalley contends that the prosecutor improperly focused on Dressler's words when he later told the jury, "Listen to the statements. Listen to Jennifer Dressler saying, We got your piece and him saying, Cool, that's all I need to know." Again, we disagree that this argument was improper, because the prosecutor was merely using Dressler's words to provide context and give meaning to Smalley's response. This was precisely the nonhearsay purpose for which her statements were admitted.

¶ 44 Third, Smalley contends that the prosecutor improperly used Dressler's statements for their truth to establish the timeline for possession of the gun. Defense counsel had argued in closing that any gun Smalley may have possessed was stolen before the charged time period of October 25–28. The prosecutor used the Dressler call to rebut that argument by saying: "When was it stolen? We know that from the other phone call, of course. We know Kim went in and took it out of the closet for him. We know about when she did that."

¶ 45 We agree that this argument was improper. Although there was other independent evidence showing that someone broke into Smalley's house during the charged time period, the only evidence that Smalley's ex-wife had removed a gun at that time came from Dressler's statements. Thus, unlike the first two arguments by the prosecutor challenged on appeal, the prosecutor's argument here improperly used Dressler's statements for their truth instead of the limited nonhearsay purpose for which they were admitted.

## C.  Whether the Improper Argument Warrants Reversal

¶ 46 Nevertheless, we conclude that this single instance of improper argument did not amount to plain error requiring reversal. The Dressler call was frequently mentioned in closing arguments, yet this was the only time the prosecutor relied on Dressler's statements for the truth of the matter asserted. At all other times, the prosecutor properly used Dressler's statements for the nonhearsay purpose for which they were admitted—to provide context for Smalley's statements and make them understandable to the jury. The jury had already received a limiting instruction explaining that it could consider Dressler's statements only for that limited purpose.

¶ 47 Moreover, the prosecutor's argument did not draw a contemporaneous objection from defense counsel. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1054 (Colo.2005) ("The lack of an objection may demonstrate the defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." (internal quotation marks omitted)). Indeed, the record shows that defense counsel objected a number of times to parts of the prosecutor's closing arguments, but never regarding the prosecutor's use of any of Dressler's statements. Any confusion caused by the prosecutor's improper argument could easily have been remedied if defense counsel had asked the court to repeat its limiting instruction. However, defense counsel did not do so, and the court's failure to repeat the instruction sua sponte is not reversible error. *See Robinson*, 226 P.3d at 1153.

¶ 48 Finally, we note that the truth or falsity of Dressler's statements had no direct bearing on Smalley's guilt. The prosecutor needed to prove that Smalley had possessed a gun on the day he was arrested, not that someone later removed a gun from his house. As discussed above, the jury could properly infer from Smalley's own statements that he owned a gun and had left it in his house on the day he was arrested, whether or not Dressler's statements were true.

¶ 49 Under these circumstances, we conclude that the prosecutor's misuse of Dres-

sler's statements in this isolated instance did not "so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *McMinn*, ¶ 58. Accordingly, it did not amount to plain error.

## IV. Jury Access to Exhibits

¶ 50 Smalley next contends that the trial court erred by allowing the jury unfettered access during deliberations to recordings of the Dressler call and two other phone calls to which Smalley was a party.[1] We disagree.

### A. Trial Court Proceedings

¶ 51 Before deliberations began, the court instructed the jury on several logistical matters, including how to communicate questions to the court. During this discussion, the court stated, "If you want to hear the recorded call, just send out a note telling us that and we will get you some equipment to do that."

¶ 52 At 5:00 p.m. that day, the jury sent out a note stating that it "would like to play back all 3 CDs of phone conversations." The court asked counsel whether either of them objected to giving the jury "free access" to the recordings.

¶ 53 Defense counsel responded that he objected to free access, and he requested that the recordings be played in their entirety for the jury in open court. He explained: "What I don't want them to be doing is pressing fast forward and stopping and rewinding and going over and highlighting one particular area of it. I think all 12 should listen to the entire thing from start to finish."

¶ 54 The court sent the jury home for the night and continued its discussion with counsel the following morning. The court stated that it had reviewed *DeBella v. People*, 233 P.3d 664 (Colo.2010), the controlling supreme court case on unfettered access to exhibits in the jury room. The prosecutor asked the court to make a determination, as required under *DeBella*, as to (1) whether the exhibit

would aid the jury and (2) whether a party would be unfairly prejudiced by giving the jury access to the exhibit. The prosecutor also asked the court to issue a limiting instruction.

¶ 55 Referencing the first consideration under *DeBella*, the court stated: "Clearly I can make the finding that it would aid the jury and its proper consideration of the case."

¶ 56 With regard to prejudice, the second consideration under *DeBella*, the court asked defense counsel to articulate what prejudice would result from giving the jury free access to the recorded calls. Counsel replied:

I don't really have anything specific to add to that, Your Honor. The only thing that I would say is, generally speaking, I don't want them focusing on one piece of evidence, to the exclusion of other pieces of evidence. This is just one piece of evidence. And my fear would be that they would get back there and they would just start playing and replaying and replaying portions of the tape, and so that's why I would want it to be done in a more controlled environment. That's all I wanted to put on the record.

¶ 57 The court then asked counsel to "suggest language for the instruction that will go back with them with respect to not giving any one piece of evidence undue weight and consider all the evidence as a whole." After input from the prosecutor, the court settled on the following instruction: "I want to remind you to consider all the evidence admitted at trial, not just the CDs." Defense counsel stated, "I stand on my objection, but I approve that language, if the Court is not going to sustain my objection."

¶ 58 The court then provided the recordings to the jury along with a written limiting instruction containing the agreed-upon language.

### B. Standard of Review

¶ 59 A trial court retains discretionary control over a jury's access to exhib-

---

1. The other recordings were of (1) a phone call from Smalley to his daughter while he was in jail and (2) a phone call from a police detective to Smalley in which Smalley stated a gun had been stolen. Because Smalley does not present any arguments on appeal specific to the other two calls, we focus our analysis on the Dressler call.

its during deliberations. *Id.* at 666; *Frasco v. People,* 165 P.3d 701, 704 (Colo.2007). Accordingly, we review a court's decisions regarding the jury's access to exhibits for an abuse of discretion. *DeBella,* 233 P.3d at 667. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law. *Id.;* *Esparza–Treto,* 282 P.3d at 480. A court's failure to exercise its discretion in this area also constitutes an abuse of discretion. *DeBella,* 233 P.3d at 667.

¶ 60 Where, as here, the defendant preserved his objection at trial, we apply the harmless error standard to determine whether any error in granting the jury access to an exhibit during deliberations warrants reversal. *See id.* We will reverse only if the erroneous ruling "substantially influenced the verdict or affected the fairness of the trial." *Id.* (internal quotation marks omitted).

### C. Applicable Law

¶ 61 "Generally, a jury is permitted to take into the jury room all exhibits received into evidence, subject to the trial court's discretion to order otherwise." *People v. Jefferson,* 2014 COA 77M, ¶ 10, —— P.3d —— (*cert. granted* Dec. 22, 2014). However, the court has an obligation "to assure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial to a party." *DeBella,* 233 P.3d at 666 (internal quotation marks omitted). "This obligation is particularly pronounced with respect to jury access during deliberations to portions of trial testimony . . . and to exhibits substituting for trial testimony." *Jefferson,* ¶ 10 (citing *Frasco,* 165 P.3d at 704).

¶ 62 In *Frasco,* 165 P.3d at 704–05, the Colorado Supreme Court described the considerations that a trial court should weigh in deciding whether to grant access to an exhibit:

> [T]he trial court's ultimate objective must be to assess whether the exhibit will aid the jury in its proper consideration of the case, and even if so, whether a party will nevertheless be unfairly prejudiced by the jury's use of it. Parties must, of course, be given an opportunity to be heard on the matter . . . .

(Citations omitted.) The supreme court held that the trial court did not abuse its discretion in giving the jury access to a videotaped statement of the child sex assault victim during deliberations because the court (1) "cautioned the jury at the time of its admission not to give the videotape any greater significance than other evidence at trial"; (2) waited for the jury to request the exhibit; and (3) sought input from defense counsel, who did not object to giving the jury access. *Id.* at 705.

¶ 63 In *DeBella,* 233 P.3d at 666–69, the supreme court again considered whether a trial court erred in providing access to a child victim's videotaped statement. Applying *Frasco,* the supreme court held that the trial court failed to exercise its discretion because it did not assess whether the exhibit would aid the jury and whether a party would be unfairly prejudiced. *Id.* at 668. The supreme court outlined several options available to trial courts:

> Ultimately, crafting the right procedure to assure the jury does not use trial exhibits in a manner that is unfairly prejudicial to a party rests with the sound discretion of the trial court. A court may, as it did in *Frasco,* simply wait for a jury's request to review such testimonial exhibits before providing the jury access. The court could admonish the jury not to give the exhibit undue weight or emphasis, instruct the jury that it watch the video no more than a specific number of times, or even require that the video be viewed in open court or under the supervision of a bailiff. In selecting those controls appropriate for each case, the trial court will have made a record of its assessment.

*Id.* at 669 (citations omitted).

### D. Analysis Under *Frasco* and *DeBella*

¶ 64 We now turn to the question whether the trial court properly exercised its overall discretion in providing the jury access to the recorded calls during deliberations. We note that the recordings included not only statements by Smalley but also non-

testimonial statements by people other than Smalley. The People argue on appeal that *Frasco* and *DeBella* are technically inapplicable here because the recordings were nontestimonial and contained Smalley's own statements. We need not address that contention, however, because even if we assume the *Frasco* and *DeBella* framework applies to nontestimonial evidence, the record shows the trial court correctly applied the framework to the evidence before it and that the court properly exercised its overall discretion in giving the jury access to the recorded statements during its deliberations.

¶ 65 The court did not automatically provide the jury with access to the recordings, but waited until the jury requested them. *See DeBella*, 233 P.3d at 669. After the jury's request, the court sought input from counsel. *See Frasco*, 165 P.3d at 705. Relying on *DeBella*, the court then assessed (1) whether the exhibits would aid the jury and (2) whether a party would nevertheless be unfairly prejudiced. *See DeBella*, 233 P.3d at 668. First, the court made a specific finding that the recordings would aid the jury in its proper consideration of the case. Second, the court asked defense counsel to articulate what prejudice might result from providing access to those exhibits. Defense counsel's only stated concerns were that the jury would focus on one piece of evidence to the exclusion of other pieces of evidence and listen to portions of the tape repeatedly. The court addressed these concerns by crafting language for a limiting instruction, which defense counsel approved. *See id.* at 668–69.

¶ 66 We reject Smalley's argument that the court's instruction "did not provide the critical message used in *Frasco* and endorsed in *DeBella*." *DeBella* stated that courts could "admonish the jury not to give the exhibit undue weight or emphasis." *Id.* at 669. Although the trial court here did not use these exact words, it communicated the substance of that message by instructing the jury that it should consider all of the evidence, not just the recordings. Moreover, the language of the instruction directly addressed defense counsel's stated concerns and was approved by him at trial.

¶ 67 We also reject Smalley's argument that the court erred when it told the jury before deliberations began that the jury could request the recordings by sending out a note. In our view, this was nothing more than an instruction on how to communicate with the court during deliberations, and it was one of a number of logistical matters that the court discussed with the jury at that time.

¶ 68 For these reasons, we conclude that the trial court did not abuse its discretion in providing the jury with the recorded calls during deliberations.

## V. Sentencing

¶ 69 Smalley next contends that his sentence must be vacated and the case must be remanded for resentencing because the trial court did not give him the opportunity to speak on his own behalf at his sentencing hearing. We agree.

### A. Smalley's Sentencing Hearing

¶ 70 Smalley appeared with counsel at his sentencing hearing. The prosecutor sought an aggravated sentence based on Smalley's prior criminal history and the facts of this case, and defense counsel argued that an aggravated sentence was inappropriate. After defense counsel spoke, the court said, "I see that there are other people in court. Is there anybody else that wants to speak?" One person then spoke briefly on Smalley's behalf. The court imposed an aggravated sentence based on Smalley's prior felony convictions.

¶ 71 After sentencing, Smalley wrote a letter to the court pro se requesting resentencing on the basis that he was not given the opportunity to speak on his own behalf. The court denied his request because a notice of appeal had already been filed.

### B. Applicable Law

¶ 72 Before imposing a sentence, a trial court must "afford the defendant an opportunity to make a statement in his or her own behalf and to present any information in mitigation of punishment." § 16–11–102(5), C.R.S. 2015; *accord* Crim. P. 32(b)(1).

¶ 73 "To afford a defendant the opportunity to make a statement on his behalf, the trial court must address the defendant in a manner that leaves no doubt that the defendant is personally invited to speak prior to sentencing." *People v. Marquantte*, 923 P.2d 180, 186 (Colo.App.1995) (citing *Green v. United States*, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)).

¶ 74 The remedy for denial of a defendant's right to speak at sentencing is resentencing. *Id.*

C. Standard of Review and Preservation

¶ 75 The parties dispute whether Smalley preserved this issue and what standard of review applies.

¶ 76 We first address the standard of review for determining whether the trial court erred. Smalley argues that we should apply de novo review, and the People argue that we should review for an abuse of discretion.

¶ 77 We agree with Smalley. Although no published Colorado case has explicitly addressed this issue, it appears that Colorado appellate courts have reviewed the record of sentencing de novo to determine whether a court afforded a defendant the opportunity to speak. *See People v. Garcia*, 752 P.2d 570, 575–77 (Colo.1988); *People v. Perea*, 74 P.3d 326, 336 (Colo.App.2002); *Marquantte*, 923 P.2d at 186. Moreover, a defendant's right to speak at sentencing is prescribed by statute, and trial courts have no discretion in this area. *See* § 16–11–102(5). Therefore, we conclude that the standard of review for determining whether the trial court erred is de novo for this type of claim.

¶ 78 We next address the standard of review for determining whether any error requires reversal or vacation of the sentence. The People contend that Smalley failed to preserve this issue because he did not raise it at sentencing, and, therefore, the plain error standard applies. Smalley argues that he preserved the issue by writing a letter to the court after his sentencing hearing. He fur-

ther argues that denial of a defendant's right to speak requires resentencing without a showing of prejudice and regardless of whether the defendant contemporaneously objected.

¶ 79 Where a nonconstitutional claim of error is preserved by contemporaneous objection, we apply the harmless error standard to determine whether reversal is required. *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116. Where a claim of error is unpreserved, we apply the plain error standard. *Id.* at ¶ 14; *People v. Banark*, 155 P.3d 609, 611 (Colo.App.2007) (applying plain error standard in sentencing context).[2]

¶ 80 No published Colorado case has addressed the issue of preservation for this type of claim. The divisions in *Perea* and *Marquantte* remanded for resentencing based solely on a conclusion that the trial court erred, without analyzing either preservation or prejudice. *Perea*, 74 P.3d at 336; *Marquantte*, 923 P.2d at 186. The only case to articulate a standard for reversal for this type of claim, *People v. Martinez*, 83 P.3d 1174, 1181 (Colo.App.2003), applied the harmless error standard without discussing whether the claim was preserved. The division in *Martinez* concluded that the trial court's error in denying the defendant an opportunity to speak was harmless because the court imposed the minimum sentence permitted by law. *Id.*

¶ 81 We agree with the People that this issue is unpreserved because Smalley failed to raise it at his sentencing hearing. Smalley's post-sentencing letter, sent after the notice of appeal had been filed, did not preserve the issue because it did not "allow[ ] the trial court a meaningful chance to prevent or correct the error." *Martinez v. People*, 2015 CO 16, ¶ 14, 344 P.3d 862. Accordingly, we apply the plain error standard to determine whether the error warrants reversal. *See Banark*, 155 P.3d at 611.

2. We recognize that there is some debate on this court regarding whether plain error review applies in the sentencing context. *See People v. Tillery*, 231 P.3d 36, 52–55 (Colo.App.2009) (Bernard, J., specially concurring). Because neither party has raised that issue here, we follow the cases that have applied plain error review to unpreserved errors in sentencing. *See, e.g., People v. Banark*, 155 P.3d 609, 611 (Colo.App. 2007).

¶ 82 Plain error is error that is both obvious and substantial. *Id.* Under the plain error standard, we will not vacate a sentence unless "the error so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the sentence." *Id.*

### D. Analysis

¶ 83 We conclude that the court did not afford Smalley an opportunity to speak on his own behalf at sentencing as required under section 16–11–102(5). The record shows that the court did not directly address Smalley or personally invite him to speak. *See Marquantte,* 923 P.2d at 186. The court's inquiry whether "other people in the court" wanted to speak was clearly directed to the nonparties in attendance, not to Smalley.

¶ 84 Thus, this case is distinguishable from *Green,* 365 U.S. at 304–05, 81 S.Ct. 653, relied on by the People. In *Green,* the United States Supreme Court concluded that the trial court did not violate a federal rule guaranteeing defendants an opportunity to speak at sentencing because "[t]he single pertinent sentence—the trial judge's question 'Did you want to say something?'—may well have been directed to the defendant and not to his counsel." *Id.* at 304, 81 S.Ct. 653. By contrast, the court in this case made no statement that we could construe as directed at Smalley. Moreover, *Green* clarified that judges in the future should "unambiguously address themselves to the defendant" and "leave no room for doubt that the defendant has been issued a personal invitation to speak."[3] *Id.* at 305, 81 S.Ct. 653. Colorado courts have consistently applied this standard. *See Martinez,* 83 P.3d at 1181; *Perea,* 74 P.3d at 336; *Marquantte,* 923 P.2d at 186.

¶ 85 We also conclude that the court's failure to afford Smalley an opportunity to speak amounted to plain error. The error was obvious because the court's obligation to afford a defendant an opportunity to speak at sentencing was well-settled under Colorado statutes, court rules, and case law. *See*

§ 16–11–102(5); Crim. P. 32(b)(1); *Marquantte,* 923 P.2d at 186.

¶ 86 The error was also substantial. The court exercised its discretion to impose an aggravated sentence without allowing Smalley to express, in his own words, why mitigating circumstances or other factors might justify a lesser sentence. *Cf. Martinez,* 83 P.3d at 1181 (error was harmless where court had no discretion to impose a lesser sentence). Smalley's letter to the court indicated that he intended to respond to the prosecutor's arguments in favor of an aggravated sentence. We are not persuaded that any prejudice was avoided merely because defense counsel argued on Smalley's behalf. "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green,* 365 U.S. at 304, 81 S.Ct. 653. Under these circumstances, we conclude that the court's denial of Smalley's right to speak "so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the sentence." *Banark,* 155 P.3d at 611.

¶ 87 Therefore, we vacate the sentence and remand for resentencing to allow Smalley an opportunity to speak on his own behalf.

### VI. Correction of the Mittimus

¶ 88 Finally, the parties agree that the mittimus should be corrected to reflect that Smalley was convicted of a class 6 felony and must serve twelve months mandatory parole.

¶ 89 The court originally sentenced Smalley to twelve months mandatory parole, as required for a class 6 felony. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2015. However, the mittimus erroneously indicated that Smalley was convicted of a class 5 felony. The DOC notified the court that a twelve-month period of parole was inconsistent with a class 5 felony and sought clarification. Instead of correcting the felony level error, the court amended the mittimus to order that Smalley serve twenty-four months mandatory parole, as required for a class 5 felony. *See id.*

---

3. The federal rule was subsequently amended to require the court to address the defendant personally. *See* Fed.R.Crim.P. 32(i)(4)(A)(ii).

¶ 90 On remand, the court should correct the mittimus to reflect that Smalley was convicted of a class 6 felony and must serve twelve months mandatory parole.

## VII. Conclusion

¶ 91 The judgment is affirmed, the sentence is vacated, and the case is remanded for resentencing and correction of the mittimus.

Márquez * and Vogt*, JJ., concur.