23CA0300 Peo v Diaz-Olivas 04-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0300
Jefferson County District Court No. 21CR1679
Honorable Christopher J. Munch, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christian David Diaz-Olivas,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Christian David Diaz-Olivas,[1] appeals his convictions of first degree assault (extreme indifference), vehicular assault (DUI), and vehicular assault (reckless)[2]  He argues that (1) his convictions for extreme indifference first degree assault, vehicular assault (reckless), and vehicular assault (DUI) violate equal protection as applied to him; and (2) the trial court reversibly erred in its response to a jury deliberation question.  We disagree and affirm the judgment.

## I.    Background

¶ 2    In the early morning hours of June 12, 2021, Phoenix nightclub personnel asked Diaz, his brother Miguel, and their friend, Israel Barrales-Lopez, to leave after they fought with another patron.  Barrales-Lopez left first with Diaz.  When Miguel finally left, Diaz got into the driver's seat of Miguel's red truck because his brother was "too drunk" to drive.  Barrales-Lopez followed the truck

---

[1] The opening brief states that defendant prefers to be called "Diaz" rather than "Diaz-Olivas."  Accordingly, we refer to him as Diaz and mean no disrespect in doing so.
[2] He does not challenge his vehicular eluding convictions, his conviction for leaving the scene of an accident resulting in serious bodily injury, or his misdemeanor convictions.

in his car.  The truck left through the parking lot's single entrance/exit and drove off.

¶ 3    Several minutes later, Diaz returned to the parking lot.  The parking lot was full of people, and a taco truck was positioned near the parking lot's entrance/exit.  Several barricades surrounded the taco truck to protect the dozens of people located near it, including the patron with whom Diaz and his group had fought earlier inside the club.

¶ 4    Diaz circled around the parking lot before accelerating directly toward the taco truck.  Diaz drove approximately twenty miles per hour through the crowded parking lot, through the barricades, and into both the taco truck and Luis Ramirez-Soto.  Diaz then reversed, ran over Ramirez-Soto's leg, and exited the parking lot, leaving Ramirez-Soto unresponsive on the ground.  As Diaz drove away, members of the crowd ran to get out of the truck's path, and several witnesses heard gunshots but did not know who was shooting.

¶ 5     Police officers then dispatched a "BOLO"[3] for the truck.  About ten blocks from the nightclub, an officer observed the truck "going really fast."  The officer followed Diaz and witnessed him run a red light, which prompted the officer to activate their lights and sirens.  Diaz then led the officer on a high-speed chase, reaching speeds over ninety-five miles per hour.

¶ 6     The chase ended when Diaz crashed into a car exiting the freeway, injuring the other driver.  Diaz's truck "spun around to the left into" the lanes of oncoming traffic, "rolled a couple times," and "landed on its rims."  Officers approached the truck and told Diaz to get out.  In response, one of the officers heard the gas "being pressed" and the "engine revving."  Ultimately, the officers pulled Diaz and his brother out of the truck.  As they did so, the engine caught fire, and the truck went "up in flames."

¶ 7     Diaz told the officers that he "knew he shouldn't have been driving" because he had been drinking but "just wanted to go home."  Officers detected an odor of alcohol on him, saw that his "pupils were extremely dilated," saw that he "was having difficulty

---

[3] "BOLO" means "Be on the Lookout."

walking in a straight line," and noted that he spoke "with kind of [a] slur." Toxicology results showed that Diaz's blood alcohol content was .121 and that he had 50 nanograms per milliliter of cocaine and "10 plus or minus 2" nanograms per milliliter of tetrahydrocannabinol (THC) in his system.

¶ 8 As relevant here, the prosecution charged Diaz with attempted first degree murder (extreme indifference), first degree assault (extreme indifference), vehicular eluding with injury, vehicular assault (driving under the influence (DUI)), vehicular assault (reckless), and leaving the scene of an accident resulting in serious bodily injury. At trial, Diaz admitted guilt on all of the charges except those involving extreme indifference. He admitted that "plow[ing] through a crowd" could qualify as universal malice but stated that it was just a "drunken accident" where he acted "stupid" and "impulsive" in exiting the parking lot. The jury acquitted Diaz of attempted extreme indifference first degree murder, but it convicted him of the remaining accounts.

## II. Equal Protection

¶ 9 Diaz contends that the trial court violated his right to equal protection of the laws by permitting him to be convicted of extreme

indifference assault rather than vehicular assault (DUI) or vehicular assault (reckless). *Compare* § 18-3-202(1)(c), (2)(b)-(c), C.R.S. 2024, *with* § 18-3-205(1)(b)(I), C.R.S. 2024, *and* § 18-3-205(1)(a). He reasons that there is not an intelligent standard to determine whether his actions demonstrated knowing conduct with an extreme indifference to the value of human life as compared to reckless, drunken conduct. We are not persuaded.

## A. Standard of Review and Applicable Law

¶ 10 The parties agree that this issue is not preserved but dispute whether we should consider the as-applied constitutional challenge under the plain error standard for the first time on appeal. We elect to do so because the record is sufficiently developed for us to conduct a plain error analysis. *See People v. Allman*, 2012 COA 212, ¶¶ 15-16 (choosing to consider the defendant's unpreserved as-applied vagueness challenge for plain error because the record was sufficiently developed).

¶ 11 We review the constitutionality of statutes de novo. *People v. Lente*, 2017 CO 74, ¶ 10; *People v. Grudznske*, 2023 COA 36, ¶ 9. Statutes are presumed to be constitutional. *Lente*, ¶ 10. Moreover, declaring a statute unconstitutional is "one of the gravest duties

impressed upon the courts." *People v. Graves*, 2016 CO 15, ¶ 9

(quoting *City of Greenwood Village v. Petitioners for the Proposed*

*City of Centennial*, 3 P.3d 427, 440 (Colo. 2000)). "Consequently, a

party challenging the constitutionality of a statute must prove the

statute's unconstitutionality beyond a reasonable doubt." *Id.*

¶ 12    Because Diaz did not preserve this issue, we will not reverse

unless any error was plain. *See Hagos v. People*, 2012 CO 63, ¶ 14.

An error is plain if it is obvious and so undermines the fundamental

fairness of the trial as to cast serious doubt on the reliability of the

judgment of conviction. *Cardman v. People*, 2019 CO 73, ¶ 19. An

error is obvious if it contravenes a clear statutory command, a well-

settled legal principle, or Colorado case law. *Id.* at ¶ 34.

¶ 13    The due process clause of the Colorado Constitution

guarantees equal protection of the laws. Colo. Const. art. II, § 25.

Unlike its federal counterpart, *see* U.S. Const. amend. XIV,

Colorado's equal protection guarantee is violated when different

statutes proscribe identical criminal conduct, yet the defendant is

convicted under the one that punishes that conduct more harshly.

*People v. Stewart*, 55 P.3d 107, 114 (Colo. 2002); *Dean v. People*,

2016 CO 14, ¶ 14. Similarly, "[s]tatutes prescribing different

sanctions for what ostensibly might be different acts, but offering no rational standard for distinguishing such different acts for purposes of disparate punishment, also contravene the equal protections guaranties of Colorado's constitution." *People v. Wilhelm*, 676 P.2d 702, 704 (Colo. 1984).

¶ 14    However, "the fact that a single act may give rise to more than one criminal violation does not, by itself, create an equal protection problem." *People v. Madril*, 746 P.2d 1329, 1333 (Colo. 1987). When evaluating an as-applied equal protection challenge, we consider whether, under the circumstances of the case, "the relevant statutes, or specific subsections of the statutes, punish identical conduct, and whether a reasonable distinction can be drawn between the conduct punished by the two statutes." *People v. Trujillo*, 2015 COA 22, ¶ 21. "To establish a reasonable distinction between two statutes for purposes of equal protection, the statutory classifications of crimes must be 'based on differences that are real in fact and reasonably related to the general purposes of criminal legislation.'" *People v. Brockelman*, 862 P.2d 1040, 1041 (Colo. App. 1993) (quoting *People v. Mumaugh*, 644 P.2d 299, 301 (Colo. 1982)). This means that a person of average intelligence

must be able to distinguish the conduct proscribed under each statute. *Grudznske,* ¶ 13.

¶ 15    To determine whether two statutes proscribe identical conduct, we compare the elements of each offense, not the evidence presented at trial. *Stewart,* 55 P.3d at 115 ("We emphasize that this task requires a facial examination of the elements comprising each crime."); *People v. Jauch,* 2013 COA 127, ¶ 9. Equal protection is satisfied when the statutes at issue proscribe different conduct. *Campbell v. People,* 73 P.3d 11, 14 (Colo. 2003).

¶ 16    A person commits first degree assault (extreme indifference) if that person, "[u]nder circumstances manifesting extreme indifference to the value of human life," (1) "knowingly engages in conduct which creates a grave risk of death to another person" and (2) "thereby causes serious bodily injury to any person." § 18-3-202(1)(c); *see* COLJI–Crim. 3-2:03 (2024). "Grave" and "extreme indifference" are not statutorily defined. However, "grave" is commonly understood to mean "serious or imminent, or likely to produce great harm or danger," while "extreme indifference" is generally understood to mean "a total lack of concern or caring." *People v. Esparza-Treto,* 282 P.3d 471, 480 (Colo. App. 2011) (first

8

quoting *People v. Marcy*, 628 P.2d 69, 79 (Colo. 1981); and then quoting *People v. Johnson*, 923 P.2d 342, 347 (Colo. App. 1996)).  A person acts "knowingly" with "respect to conduct . . . described by a statute defining an offense when he is aware that his conduct is of such nature" and, with "respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." § 18-1-501(6), C.R.S. 2024.  Extreme indifference first degree assault is a class 3 felony.  § 18-3-202(2)(b).

¶ 17    A person commits vehicular assault (reckless) if (1) they operate or drive a motor vehicle in a reckless manner, and (2) this conduct proximately causes serious bodily injury to another.  § 18-3-205(1)(a); *see* COLJI–Crim. 3-2:26.  The relevant mental state is recklessness.  "A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18-1-501(8).  Vehicular assault (reckless) is a class 4 felony.  § 18-3-205(1)(c).

¶ 18    A person commits vehicular assault (DUI) if (1) they operate or drive a motor vehicle while under the influence of alcohol or one or more drugs, or a combination of both, and (2) this conduct is the proximate cause of a serious bodily injury.  § 18-3-205(1)(b)(I); *see*

9

COLJI–Crim. 3-2:27.  Vehicular assault (DUI) is a strict liability crime.  § 18-3-205(1)(b)(I).  It is also a class 5 felony.  § 18-3-205(1)(c).

## B.    Analysis

¶ 19    We begin by comparing the elements of extreme indifference first degree assault and vehicular assault (both reckless and DUI) and conclude they do not proscribe identical conduct.  *See Grudznske*, ¶¶ 13-23 (rejecting an as-applied equal protection claim involving attempted extreme indifference first degree assault and attempted vehicular assault (DUI)).

¶ 20    Extreme indifference first degree assault requires a showing that the defendant acted "knowingly" and that they acted under circumstances demonstrating an attitude of universal malice manifesting an extreme indifference to the value of human life generally.  In contrast, vehicular assault (reckless) requires a showing that the defendant acted recklessly, while vehicular assault (DUI) is a strict liability crime.  *See People v. Tarr,* 2022 COA 23, ¶ 63 (noting that second degree murder and vehicular homicide (DUI) "involve different levels of intent"), *rev'd on other grounds*, 2024 CO 37; *see also People v. Prieto,* 124 P.3d 842, 847 (Colo. App. 2005)

10

(distinguishing between felony murder, which requires the defendant to act knowingly, and vehicular homicide, which requires either reckless conduct or voluntary conduct (for the strict liability version of the offense)). And we note that Diaz does not meaningfully contest these different mental states in his opening brief.

¶ 21 Additionally, the vehicular assault charges require proof that the defendant drove or operated a motor vehicle, an element not required for proof of extreme indifference first degree assault. Moreover, only vehicular assault (DUI) requires proof of intoxication. *Tarr*, 2022 COA 23, ¶ 63 (noting that vehicular homicide requires driving or operating a motor vehicle and legal intoxication while second degree murder does not); *Prieto*, 124 P.3d at 847 (noting that an "actus reus of greater specificity will distinguish prohibited conduct" and that vehicular homicide requires "operation of a motor vehicle" whereas felony murder does not). Moreover, the distinctions between the assault statutes "are not only 'real in fact,' but also 'reasonably related to the general purposes of criminal legislation,' such as deterring individuals from more egregious behavior by imposing a harsher penalty for offenses

having a greater deleterious impact on society," *Tarr*, 2022 COA 23, ¶ 63 (citation omitted), like extreme indifference first degree assault here. *See Grudznske,* ¶ 30 (recognizing that "engag[ing] in conduct manifesting an extreme indifference to the value of human life and knowingly creat[ing] a grave risk of death to persons other than himself" involves a greater "degree of moral culpability" and requires more serious conduct than that involved in vehicular homicide and assault); *see also Dean,* ¶ 16 ("[T]he General Assembly has the prerogative to establish the penalties for criminal offenses and is entitled to establish more severe penalties for acts it believes have greater social impact and graver consequences."). Therefore, the statutes do not describe identical conduct.

¶ 22    In addition to comparing the elements of the offenses, equal protection requires us to determine whether a rational standard exists by which a reasonable juror could distinguish between extreme indifference first degree assault and vehicular assault, based on the evidence presented. *Grudznske,* ¶ 17. This requires us to consider Diaz's conduct both before and after striking Ramirez-Soto. *See id.*

¶ 23    Diaz does not dispute that he was legally intoxicated both by alcohol and drugs.  Nevertheless, after an altercation in the nightclub resulting in his removal, he chose to drive the truck, believing his brother was too drunk to do so.  Diaz left the parking lot and drove away.  But he did not stay away and instead drove back to the nightclub.  Diaz drove into the parking lot, which was now filled with people; accelerated the truck to twenty miles per hour; drove toward the taco stand where Ramirez-Soto, who he had previously argued with, was standing; drove directly into the barricade surrounding the taco truck; and struck Ramirez-Soto. We conclude that a reasonable juror could find that these actions reflected both knowing conduct (returning to the nightclub and driving directly toward the taco stand) and an extreme indifference to the value of human life (driving the truck at twenty miles per hour through a crowd of people and into the barricade and taco truck).

¶ 24    Rather than stopping his truck, Diaz placed the truck in reverse, drove out of the parking lot, and accelerated away from the nightclub.  He then failed to pull over when an officer tried to initiate a traffic stop and, instead, led police on a high-speed chase,

13

running red lights and reaching speeds of more than ninety-five miles per hour before crashing into a car that was exiting the freeway. After the accident, Diaz did not cooperate with the officers' commands to exit the truck and had to be physically extracted. Moreover, he admitted that he was intoxicated and should not have been driving and explained that he was just trying to go home. While the parties do not dispute that Diaz was legally intoxicated or that he acted recklessly, we conclude that his post-assault conduct constitutes evidence of consciousness of guilt, which bolsters a jury's ability to find that he acted knowingly and with extreme indifference to the value of human life when he struck Ramirez-Soto in the parking lot and left the scene. *See People v. Summitt*, 132 P.3d 320, 324 (Colo. 2006) ("Evidence of flight and concealment to avoid arrest can be admissible to show consciousness of guilt . . . .").

¶ 25    Moreover, we reject Diaz's request not to follow *Grudznske* and find that case persuasive and supportive of our analysis here. As here, the *Grudznske* division relied on the defendant's significant intoxication, reckless driving in a heavily trafficked area, failure to stop for a red light, and combative nature after the accident to

support its holding that a "reasonable juror could conclude these actions reflected an extreme indifference toward the value of human life." *Grudznske*, ¶¶ 18-21.

¶ 26    Under the circumstances of this case, a "person of average intelligence" could find that Diaz not only committed vehicular assault but also that he acted "knowingly" and "under circumstances manifesting extreme indifference to the value of human life." *Id.* at ¶¶ 21, 23; *accord Tarr*, 2022 COA 23, ¶¶ 65-66 (noting that the facts supporting second degree murder in that case were "materially different and more specific than that required for a vehicular homicide (DUI) conviction" even though both charges concerned the same collision); *Esparza-Treto*, 282 P.3d at 480 (Extreme indifference is "a total lack of concern or caring." (quoting *Johnson*, 923 P.3d at 347)). "That is all that is necessary to distinguish the statutes in the wake of an equal protection challenge." *Grudznske*, ¶ 21 (quoting *People v. Jefferson*, 748 P.2d 1223, 1233 (Colo. 1988)). Accordingly, Diaz's equal protection challenge fails.

¶ 27    But even if an error occurred, it was not so obvious as to be plain. *See Scott v. People*, 2017 CO 16, ¶¶ 16-17 (discussing when

an error is deemed to be obvious), *abrogated on other grounds by Whiteaker v. People*, 2024 CO 25, ¶25.  It is not obvious that the statutes at issue here — with distinct levels of intent and different elements — proscribe identical conduct or that there is not a rational standard for distinguishing between the acts.  *See Trujillo*, ¶ 21.  Thus, we discern no equal protection violation.

### III.    Jury Question

¶ 28    Diaz next contends that the trial court plainly erred in responding to a jury question during deliberations.  He argues that the court's response misled the jury and lowered the prosecution's burden of proof.  We disagree.

### A.    Additional Facts

¶ 29    After deliberating for one hour, the jury submitted a question asking, "Is the charge of assault in the first degree limited to events in the parking lot or the entire night."  The court drafted an initial response and asked counsel for any objections:

> I have reviewed with the attorneys the note you sent to us on the 9th of November, 2022, 2:50 p.m.
>
> The charge of first-degree assault is for the assault alleged to have been committed against Mr. Ramirez-Soto in the parking lot.  You may

16

consider all of the evidence from the trial, but any verdict must be for the alleged — for that alleged assault and no other.

¶ 30    Diaz's counsel did not object to the proposed response, but the prosecutor asked to substitute the words "in the parking lot" with "at the Phoenix nightclub location" because the former phrase limited the relevance of later events to what happened in the parking lot. Defense counsel did not object, so the court accepted that change and instructed the jury as follows:

> The charge of first-degree assault is for the assault alleged to have been committed against Mr. Ramirez-Soto at the Phoenix nightclub location. You may consider all of the evidence from the trial, but any verdict must be for that alleged assault and no other.

### B.    Standard of Review and Applicable Law

¶ 31    We review the district court's response to a jury question for an abuse of discretion. *See Gibbons v. People*, 2014 CO 67, ¶ 12. The parties agree that this issue is unpreserved, so we review for plain error as set forth above. *See Hagos*, ¶ 14. Moreover, we need not decide whether Diaz waived this issue because, even assuming without deciding that he did not, we discern no abuse of discretion by the trial court.

¶ 32    When a jury seeks clarification of information during deliberations, the court must provide additional instruction unless (1) the jurors can be adequately informed by directing them to a portion of the original instructions; (2) the request concerns matters not in evidence or not related to the law of the case; or (3) the request would call upon the judge to opine on factual matters that the jury should determine. *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986). When the court provides additional information, the "clarification should be concrete and unambiguous." *People v. Whittiker*, 181 P.3d 264, 277 (Colo. App. 2006).

## C.    Analysis

¶ 33    We discern no abuse of discretion in the trial court's response for two reasons. First, the response directly answered the jury's question concerning the scope of the evidence it could consider for extreme indifference first degree assault by clarifying that the assault related only to Ramirez-Soto at the nightclub and that the jury could consider all of the trial evidence in making its decision. Thus, the court's response was concrete and unambiguous.

¶ 34    Second, because it was proper for the jury to consider Diaz's conduct both before and after the assault, we reject his assertions

18

that evidence following the assault was admitted for a limited purpose and that permitting the jury to consider the complete trial evidence lowered the prosecution's burden of proof. *See Grudznske*, ¶ 19 ("While not determinative, a reasonable juror could conclude that Grudznske's conduct after the accident also reflected his extreme indifference to the value of human life."); *People v. Hines*, 2021 COA 45, ¶ 37 ("A jury may properly infer intent from the defendant's conduct and the circumstances of the offense."); *People v. Cisneros*, 2014 COA 49, ¶¶ 112-117 (jury was properly instructed that it could consider any evidence admitted during the trial when it asked whether a charge was isolated solely to a specific date or included prior incidents); *Summitt*, 132 P.3d at 324 (evidence of flight admissible to show consciousness of guilt).

¶ 35　Accordingly, we discern no abuse of discretion in the court's response.

## IV.　Disposition

¶ 36　The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.